# Falyk, Administratrix, v. Pennsylvania Railroad Company, Appellant.

*Negligence—Master and servant—Car cleaner—Workman caught between cars—Railroads—Assumption of risk—Federal Employers' Liability Act—Contributory negligence—Charge—Case for jury.*

1. While a master is not responsible for accidents occurring to his servants from ordinary risks and dangers which are incident to the business in which he is engaged, he is liable for injuries arising from dangers such as, in good faith, he ought to provide against.

2. In a clear case the question of assumption of risk by the employee is one of law for the court, but where there is doubt as to the facts or as to the inferences to be drawn from them the question is for the jury.

3. Where coemployees 'are distant from each other and it is dangerous for one to have another continue at his work, he who is subject to the peril not being in a position to ascertain the true conditions, it is the duty of the employer to frame and promulgate such rules and regulations as will afford safety to employees.

4. The discontinuance of a precautionary measure amounts to an assertion of the master's judgment that it is not necessary.

5. In an action against a railroad company under the Federal Employers' Liability Act to recover for the death of plaintiff's decedent, the case is for the jury where it appeared that deceased was standing between the buffers of two cars cleaning one of them when a train was shunted against one of the cars causing it to run against the other and crush decedent; that it had been customary for signals to be placed upon the cars which were being cleaned, but such custom had been discontinued under orders of defendant's foreman; and the evidence was conflicting as to whether it was necessary for the deceased to stand between the buffers in the performance of his duties.

6. In such case where it appeared that the cars which caused the accident were engaged in interstate commerce, the court properly charged that the contributory negligence of deceased, if found, would reduce the damages, but would not wholly defeat the action.

Argued Oct. 18, 1916. Appeal, No. 152, Oct. T., 1916, by defendant, from judgment of C. P. Allegheny Co., Oct. T., 1915, No. 529, on verdict for plaintiff, in case of

Tendoska Falyk, Administratrix of the Estate of John Falyk, deceased, v. Pennsylvania Railroad Company. Before BROWN, C. J., MESTREZAT, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Trespass to recover damages for the death of plaintiff's decedent. Before EVANS, J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff, Tendoska Falyk, for $2,500; for plaintiff, Barska Falyk, for $600; for plaintiff, Joseph Falyk, for $400; for plaintiff, John Falyk, for $1,000 and for plaintiff, Mary Falyk, for $500, and judgment thereon. Defendant appealed.

*Errors assigned,* among others, were in refusing to direct a verdict for defendant and in refusing to enter judgment for defendant n. o. v.

*James R. Miller,* with him *Patterson, Crawford & Miller,* for appellant.

*Joseph Stadtfeld,* for appellee.

OPINION BY MR. JUSTICE WALLING, February 5, 1917:

Plaintiff's husband, John Falyk, was killed while in the employ of defendant railroad company on July 4, 1915. He was and for over four years had been in such employ as a car cleaner in defendant's yard, which extends between Thirty-first and Thirty-third streets, Pittsburgh, where its passenger cars are transferred between the east and the west, in interstate commerce.

It is the custom for gangs of men to clean the cars while standing there awaiting transfer. Among the tracks in the yard is No. 31, where a west bound baggage car was placed on that day, and to which the gang foreman called Mr. Falyk's attention.

At the same time there was an east bound combination car for passengers and baggage standing on the same

track east of the baggage car; and between them was an open space of from three to four feet. Both were vestibule steel cars with end doors and buffers or diaphragms of the width of about three and one-half feet; and on each side of the diaphragm, at the height of some four feet from the rail, was a ledge or sill of the width of about seven and one-half inches extending outward to near the side of the car. The vestibules project so far beyond the sills that when the cars are coupled there is ample room for a workman to stand upon or between the ledges. The outside of the car is cleaned by wiping it off with waste or other like substance. The deceased, as was his duty, proceeded to wipe off the baggage car and began on the end next the combination car. The tracks there are on a slight grade descending toward the west and cars are started at the east end of the yard and then drift or drop down to the west. On this occasion a coach with four sleeping cars attached was so started or shunted down said track in charge of a brakeman for the purpose of getting the combination car. The cars ran nearly 700 feet without undue speed and under the control of the brakeman, and coupled to said combination car thereby moving it sufficiently to crush and kill Mr. Falyk, who was caught between the diaphragm of it and that of the baggage car on which he was working.

No one saw the accident and just how he came to be between the buffers or diaphragms does not appear. It was not necessary for him to occupy such a position in cleaning the ends of the cars, unless engaged in cleaning the vestibule doors; and whether it was a part of his duty so to do was a disputed question in the case. While at work on the end of the baggage car he was facing west and not where he could see the approaching cars or where he could be seen by the brakeman.

There was at that time no system of signals in use in the yard by which the deceased could give notice or warning that he was working upon and about the car, or by which he could be notified of the movement of the

cars on the track or elsewhere. Formerly, pursuant to a rule of defendant, a blue flag was placed upon a car by day and a blue light at night to indicate that work was being done thereon and that it must not be disturbed; but in October, 1913, this rule was abrogated by defendant as unnecessary, so far as it applied or was construed to apply to car cleaners, except as to those engaged in that work by the use of ladders, trestles or scaffolding. Such abrogation of the rule was by letter from the superintendent to those in charge of the workmen. The cars in question being engaged in interstate commerce, this action to recover for the death of the deceased was brought by his administratrix under the Act of Congress, known as the Federal Employers' Liability Act.

The trial judge properly instructed the jury, as provided in said act, that contributory negligence if found would reduce the damages but not wholly defeat the action; and also submitted to the jury the question of defendant's negligence and that of the assumption of risk by the deceased. The verdict was for the plaintiff, on which judgment was entered.

Of course it was the duty of the defendant to provide the deceased a reasonably safe place to work and with reasonably safe tools and appliances. The general rule seems to be that: "It is true the master is not responsible for accidents, occurring to his servant, from ordinary risks and dangers which are incident to the business in which he is engaged; for, in such case, the contract is presumed to be made with reference to such risks. But, on the other hand, where the master voluntarily subjects his servant to dangers, such as, in good faith, he ought to provide against, he is liable for any accident arising therefrom......The servant does not stand on the same footing with the master. His primary duty is obedience, and if, when in the discharge of that duty, he is damaged, through the neglect of the master, it is but meet that he should be recompensed......The employer is bound to furnish and maintain suitable instrumentalities for the

work or duty which he requires of his employees, and, failing in this, he is liable for any damages flowing from such neglect of duty": Patterson v. Pittsburgh & Connellsville R. R. Co., 76 Pa. 389; McGeehan v. Hughes, 217 Pa. 121, 126.

Whether those engaged in ordinary outside car cleaning were so exposed that due care for their protection required a system of signals or warnings to those having charge of the movement of cars on the same tracks, was a question of fact. It seems to be a correct statement of the law that: "Where coemployees are distant from each other and it is dangerous for one to have another continue at his work, he who is subject to the peril not being in a position to ascertain the true conditions, it is the duty of the employer to frame and promulgate such rules and regulations as will afford safety to employees": O'Rourke v. Alphons Custodis Chimney Construction Co., 21 Pa. Superior Ct. 52.

Whether the situation here was such as to make that rule applicable depended upon the circumstances.

The case therefore so far as referred to the alleged negligence of the defendant was for the jury.

In a clear case the question of assumption of a risk by the employee is one of law for the court, but where there is doubt as to the facts or as to the inferences to be drawn from them it becomes a question for the jury. To preclude a recovery on that ground it must appear that the employee knew and appreciated or should have known and appreciated the danger to which he was exposed; and in case of doubt that is for the jury.

See Madden v. Lehigh Valley R. R. Co., 236 Pa. 104; Valjago v. Carnegie Steel Co., 226 Pa. 514; Cole v. Wehn & Bawdon, 3 W. N. C. 409.

Except in case of obvious and immediate danger the servant in general may rely on the master's judgment: Williams v. Clark, 204 Pa. 416. Here the master by general order dispensed with the flag and light as a protection to car cleaners, in effect because not deemed neces-

sary, and nothing is shown to warrant the court in finding that the condition thereby created became one of such manifest danger as to require the servant to set up his judgment therein against that of the master. The necessity for such precaution seems yet to be a mooted question. The situation of a car cleaner is entirely different from and less hazardous than that of an inspector who goes under the car, hence this case does not seem to be controlled by that of Marean v. N. Y., Susquehanna & Western R. R. Co., 167 Pa. 220.

This case also differs from that of Brossman v. Lehigh Valley R. R. Co., 113 Pa. 490, because there the servant was injured by an obvious danger, to wit, a low bridge with which he was familiar. In Simmons v. Southern Traction Co., 207 Pa. 589, so far as appears the servant did not, as in this case, have the master's assurance that signals were unnecessary.

The discontinuance of a precautionary measure amounts to an assertion of the master's judgment that it is unnecessary, while the failure to originally establish such precaution may have resulted from oversight.

The servant assumes the ordinary risks of the business and all such obvious dangers from whatever cause arising as threaten immediate injury, but where the defect is minor and risk apparently not great, and the servant continues his work relying upon the master's assurance as to its safety, he does not thereby as matter of law assume the risk of injury from such defect. Where the question as to the safety of appliances is in doubt, the servant is not bound to set up his judgment against that of the master: Reese v. Clark, 198 Pa. 312.

In the case at bar, the extent of the risk depended largely upon whether or not it was necessary for the deceased to stand between the buffers in the performance of his duty, and as to that the evidence was conflicting.

The burden of proof as to the assumption of risk is upon the defendant and where there is any doubt as to the facts, or inferences to be drawn from them, the ques-

tion is for the jury. See Kanawha & Mich. Ry. Co. v. Kerse, Admr., 239 U. S. 581.

The deceased may have gotten between the buffers accidentally by a slip or a fall; and it is not clear that he knew the car behind him belonged to an east bound train or was liable to be disturbed.

We are not convinced that the court below erred in declining to pass upon the question of assumption of risk as one of law.

The assignments of error are overruled and the judgment is affirmed.