# Dutrey, Administratrix, *v.* Phila. & Reading Ry., Appellant.

*Negligence—Railroads—Federal Employers Liability Act—Risk of employment—Obvious dangers—Burden of proof—Contributory negligence—Case for jury.*

1. Except as to injuries resulting from the violation of statutes, the common law doctrine of assumption of risk remains as a com-

plete defense in an action under the Federal Employers Liability Act of 1908.

2. The employee assumes, as a risk of his employment, such dangers as are normally and necessarily incident to his occupation, and a workman of mature years, is taken to assume them whether he is aware of their existence or not; but risks of another sort, not naturally incident to the occupation, may arise out of the failure of the employer to exercise due care. They are the unusual, extraordinary and unexpected acts, and the employee is not to be treated as assuming such risks until he becomes aware of their existence, unless the act or risk is so obvious that an ordinarily prudent person would have observed and appreciated them.

3. It is only in a clear case that the question of the assumption of a risk is one of law for the court, and where there is doubt as to the facts, or as to inference to be drawn from them, it becomes a question for the jury. The burden of proof as to the assumption of risk is on the defendant.

4. The servant assumes the risks incident to the negligent acts of the officers, agents and fellow employees of the master, but he does not assume the risks of unusual and extraordinary acts of negligence.

5. In an action against a railroad company under the Federal Employers Liability Act to recover damages for the death of plaintiff's husband, the case is for the jury where the evidence, although in some essentials flatly contradicted, tended to show that the deceased had been employed for three or four years as a repairman; that, at the time of the accident, he was engaged in oiling a switch in defendant's yard; that in doing so he was compelled to lean over his work, and could not see, while in this position, an approaching engine, the view of which was obstructed by the girders of a bridge; that he was struck by a "helper" engine moving backwards; that there was a stop signal against the engine, as it made its return trip, and this was not released until the engine was close to the bridge, which obstructed deceased's view; and that it was the custom to ring the bell while the engine was moving backwards, but that this was not done on this occasion.

6. In such a case the failure of the engineer to give the customary warning, was an unusual and unexpected act, not to be ordinarily foreseen, and the risk of which was not assumed by the deceased.

Argued April 29, 1919. Appeal, No. 200, Jan. T., 1917, by defendant, from judgment of C. P. Cumberland Co., Feb. T., 1918, No. 24, on verdict for plaintiff in case of

Florence G. Dutrey, Administratrix of Raymond M. Dutrey, v. Philadelphia & Reading Railway Company. Before BROWN, C. J., FRAZER, WALLING, SIMPSON and KEPHART, JJ. Affirmed.

Trespass to recover damages for the death of plaintiff's husband. Before SADLER, P. J.

Verdict and judgment for plaintiff for $2,000. Defendant appealed.

*Error assigned* was in overruling motion for judgment for defendant n. o. v.

*J. W. Wetzel,* for appellant.—The defense was that the decedent lost his life by his failure to observe the ordinary risks of his employment, and that the Federal Statute of April 22, 1908, did not apply. The decedent was not engaged in a branch of the service of the defendant regulated by federal statute, which prevented the application of the defense of assumption of risk, and, therefore, such defense was open to the defendant company. The court applied the doctrine of comparative negligence, instituted by said federal statute, and submitted the question of damages based on the comparative negligence of the parties. In this, the defendant contends, the court erred.

There being no evidence that the decedent was engaged in a branch or service of the company defendant regulated by a federal statute, the defendant could unquestionably set up assumption of risk, as a full defense: Falyk v. Penna. R. R. Co., 256 Pa. 397; Jacobs v. So. Ry. Co., 241 U. S. 229; Seaboard Air Line v. Horton, 233 U. S. 492.

In the ordinary exercise of the duties of an employee engaged on the tracks of a railroad, the company in the ordinary running of its trains on its tracks, is not bound to warn or signal said employees. The dangers and risks attending the operation of said trains in the regu-

lar and ordinary way, are assumed by said employees: Heiseman v. P. R. R. Co., 19 Lanc. 321; Derr v. Lehigh Val. R. R. Co., 158 Pa. 365.

*E. M. Biddle, Jr.,* with him *Herman Berg, Jr.,* for appellee.—Where it was known that Dutrey's duty took him daily to work at the place of the accident, it became the duty of the company to give a signal of an approaching train, sufficiently adequate and timely that by exercise of due care on his part he might escape a collision: Van Zandt v. P., B. & W. R. R. Co., 248 Pa. 281; Waina v. Penna. R. R., 251 Pa. 216.

Even if plaintiff knew and assumed the risk of an inherently dangerous method of doing the work, he did not assume the increased risk attributable not to the method but to negligence in pursuing it: Chesapeake & Ohio Ry. v. Proffitt, 241 U. S. 468.

OPINION BY MR. JUSTICE KEPHART, June 21, 1919:

This was an action brought under the Federal Employers Liability Act of 1908 by the appellee to recover for the death of her husband. The sole question for determination, as stated by the appellant, is, does the testimony in the case show such a failure on the part of the company to exercise a duty owing to the defendant at the time of the accident, as would overcome the risk assumed by him, and thus bring the case within the federal statute; or, stated in another form, was the negligent act complained of, likely to happen, or so obvious, that the decedent must have known, or, as a reasonably careful person, should have known of it, and anticipated what happened, so that the court might say, as a matter of law, it was among the risks assumed, and, for that reason, his representative could not recover? By section 1 of the Employers Liability Act, a right of action is conferred on those injured engaged in interstate service by reason of negligence (1) of the employer, agents, employees, or fellow servants, (2) in providing insufficient or defective appliances. Injuries not due to negligence are excluded.

By section 3, contributory negligence of the injured person is not a bar, but when present (except where the injury is due to the violation of an act of Congress enacted for the safety of employees) the doctrine of comparative negligence is enforced. By section 4, an employee does not assume the risk of his employment, where the injury is due to the violation of a statute enacted for the safety of employees. "It seems to us that section 4, in eliminating the defense of assumption of risk in the cases indicated, quite plainly evidences the legislative intent that in all other cases such assumption shall have its former effect as a complete bar to the action": Seaboard Air Line v. Horton, 233 U. S. 492, 503; Jacobs v. Southern Ry., 241 U. S. 229, 235; Boldt v. Penna. R. R., 245 U. S. 441, 445. Except, then, as to the injuries resulting from the violation of statutes, the common law doctrine of assumption of risk still remains as a complete defense in an action under this statute, and is applicable to a case such as presented by the facts now before us. The employee assumes, as a risk of his employment, such dangers as are normally and necessarily incident to his occupation, and a workman of mature years, is taken to assume them whether he is aware of their existence or not; but risks of another sort, not naturally incident to the occupation, may arise out of the failure of the employer to exercise due care. They are the unusual, extraordinary and unexpected acts, and the employee is not to be treated as assuming such risks until he becomes aware of their existence, unless the act or risk is so obvious that an ordinarily prudent person would have observed and appreciated them: Seaboard Air Line v. Horton, supra; Jacobs v. Southern Ry., supra; Boldt v. P. R. R., supra; C. & O. Ry. Co. v. De Atley, 241 U. S. 310, 315; Erie R. Co. v. Purucker, 244 U. S. 320; C. & O. Ry. Co. v. Proffitt, 241 U. S. 462, 468. It is only in a clear case that the question of the assumption of a risk is one of law for the court, and where there is doubt as to the facts, or as to inference to be drawn from them, it becomes a question

for the jury: Falyk v. Penna. R. R. Co., 256 Pa. 397, and cases there cited. The burden of proof as to the assumption of risk is on the defendant: Kanawha & Mich. Ry. Co. v. Kerse, 239 U. S. 576, 581.

The court below correctly instructed the jury both as to the law of contributory negligence and assumption of risk, and after a thorough review of the evidence we are not persuaded the risk was so obvious as to bring it within the class of cases where it becomes the duty of the court to declare it so as a matter of law. We agree that ordinarily the servant assumes the risks incident to the negligent acts of the officers, agents and fellow employees of the master: Boldt v. P. R. R. Co., supra; but he does not assume the risks of unusual and extraordinary acts of negligence.

In the present case, the deceased was employed as a repairman in the interlocking department, and, while engaged in oiling a switch, was run over by a "helper" engine moving backwards. He was thus employed for three or four years, and his duties required his presence on the tracks at various points. He was killed in the yards, where there are three tracks, two main and one siding. A train had just moved to the east, and was assisted over the grade by the "helper." This engine returned backwards, as was its custom, to occupy the siding west of the bridge so as to be in a position to assist the next train moving east. In this movement it must use the cross-over switch where the deceased was working. From his position, he could have seen, if standing, a distance of three or four hundred feet to the east; but when stooping, as this work required, he could not see beyond the end of the bridge; the girders were from four to five feet in height, completely obstructing his view. There was a stop signal against the engine, as it made its return trip, and this was not released until the engine was close to the bridge. It clearly appeared that it was the custom to ring the bell as a warning, while moving the engine backwards, and the defendant offered evidence

to show that it had, for a distance of two or three hundred feet, performed this duty. This evidence was flatly contradicted and raised the important question of fact on which the case was submitted to the jury.

The conditions surrounding his work were unusual. To properly perform it, he must be in a stooping position, and was thus prevented, by the girders of the bridge, from seeing any safe distance, as the track curved sharply just before the approach to the eastern end of the bridge. Since the work required some little time, he could not stand erect every few minutes to observe approaching trains, and had he done so he would have seen nothing but the signal set against the engine. In the course of his work, situated as he was, he must depend on the usual, ordinary and customary signal given workmen thus employed, and the jury was warranted in finding he had a right to expect nothing unusual would happen. He was not, however, relieved of the obligation of using every precaution imposed on a prudent man; but, in the performance of this obligation, he must be judged by the character of the work engaged in, the immediate surroundings and the necessities the work entailed in its performance. The engineer, in returning from the top of the grade to the siding below, always gave the customary signal. He was in the yard limits, and knew that men were likely to be engaged at this particular place, made extra hazardous by the location of the cross-over with reference to the curve of the track and the obstructions along the track preventing a view. His failure to give warning at this time, as found by the jury, was an unusual and unexpected act, not to be ordinarily foreseen.

The case was carefully tried and we see no reason why the judgment should be disturbed. The assignments are overruled and the judgment is affirmed.