# McAvoy, Admrx., Appellant, *v.* Philadelphia & Reading Ry. Co.

*Negligence—Railroads — Promulgation of rules — Coupling of cars—Connecting air hose—Action under Federal Liability Act—Master and servant.*

1. Where a railroad employee is killed while connecting air hose under cars lying dead in a yard, the company cannot be charged with negligence in failing to promulgate rules for the protection of its employees when so engaged, where it appears that no rule which could have been devised could have protected the deceased under the circumstances.

2. No rule for the protection of workmen thus engaged would avail unless the company, through its servants, knew the workman was about to place himself in a position to be within the protection of the rule, and this is especially true where the conditions are constantly changing.

3. It is useless to complain of the absence of the rules when their presence would give no protection.

*Negligence—Railroads — Master and servant — Assumption of risk—Burden of proof—Negligence of fellow servant.*

4. It is only in a clear case that the question of the assumption of a risk is one of law for the court, and where there is doubt as to the facts, or as to the inferences to be drawn from them, it becomes a question for the jury.

5. The burden of proof as to the assumption of a risk is on the employer.

6. Assumption of risk does not include risk of negligence of fellow servants.

Argued February 9, 1925. Appeal, No. 86, Jan. T., 1925, by plaintiff, from judgment of C. P. Schuylkill Co., July T., 1922, No. 108, refusing to take off nonsuit, in case of Mary A. McAvoy, Administratrix of Michael J. McAvoy, v. Philadelphia & Reading Ry. Co. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Trespass for death of plaintiff's husband.    Before
BERGER, J.

The opinion of the Supreme Court states the facts.
Nonsuit; refusal to take off.    Plaintiff appealed.

*Error assigned* was judgment, quoting it.

*G. H. Gerber,* with him *A. D. Knittle,* for appellant.—
It was the duty of defendant company to promulgate
proper rules for the protection of its employees and es-
pecially is this so where they are engaged in work of the
kind shown in this case, where they are so scattered in
their different kinds of work that they cannot attend it
and at the same time keep track of what other employees
are doing: Falyk v. R. R., 256 Pa. 397; O'Rourke v. Con-
struction Co., 21 Pa. Superior Ct. 52; Lewis v. Seifert,
116 Pa. 647; Van Zandt v. R. R., 248 Pa. 276; Waina v.
Penna. Co., 251 Pa. 213; Haas v. R. R., 254 Pa 235;
Caldwell v. Brown, 53 Pa. 453; Feussner v. Ry., 258 Pa.
303; Dutrey v. R. R., 265 Pa. 215; Buehler v. Ry., 280
Pa. 92; Gila V. G. & N. R. R. v. Hall, 232 U. S. 94.

*John F. Whalen,* with him *George Ellis,* for appellee.

OPINION BY MR. JUSTICE KEPHART, March 16, 1925:
Michael J. McAvoy, employed as a brakeman on de-
fendant's railroad, was killed in the early morning while
connecting air hose on cars that had been standing in
the yard at Abrams, where his train was being made up
by the shifting crew, to go forward.    A large draft
of cars was pushed against those under which deceased
was working; to make the coupling it was necessary to
give a hard bump; the impact knocked McAvoy to the
ground, the wheels passing over his body.    From the
injuries thus received he subsequently died.    There were
a number of make-up tracks in the yard.    The cars under
which McAvoy was engaged were on track five, the en-
gine to haul his train on track eight, while the shifting

crew that collected the cars used all tracks. It is admitted McAvoy was employed in transporting interstate commerce.

The court below held there was no evidence tending to show defendant's negligence. Appellant argues such neglect is shown in the failure to promulgate rules requiring notice to be given persons engaged about standing cars when there are others to be pushed against them; also rules requiring trains to carry signals when approaching cars in this position. Other reasons were urged at trial, but are not pressed here.

To establish defendant's negligence, appellant relies mainly on the fact that the company failed to promulgate rules for the protection of its employees engaged in work claimed to have been shown in this case. It is difficult to know on just what theory appellant bases her contention with regard to rules. No rule for the protection of workmen thus engaged would avail unless the company, through its servants, knew the workman was about to place himself in a position to be within the protection of the rule. This is especially true where conditions are constantly changing. We may assume that defendant knew these cars were standing on track five, and were to be a part of the train being made up, and would be coupled in the manner here described. But there was nothing, either in the position of the standing cars or in their location, to indicate that the air hose on any of them was to be connected, or, more important, that anyone was in the act of coupling it. Indeed, it did not clearly appear the air hose was uncoupled on the cars, or that deceased in fact made a coupling. While, for the purpose of this case only, we might hold the master knew the cars making up the train must have the air hose connected, these acts are usually done, as the master and his servants knew, when the train was made up, not when the cars were lying dead in the yard. Even with such knowledge, there was nothing to indicate that a brakeman was there.

What rule could the company promulgate that would protect this man? Suppose a light alongside of the car was required. If defendant did not know McAvoy was going under the car, who was to place it there? No one was aware of his position until his outcry after the wheel passed over his body. Suppose a rule required lights in the yard so brilliant that vision would be as clear as by day. Here is a man under or between the center cars of a draft of six or eight cars. The approaching train crew, without an inspection of each car, would not be advised of his presence. To require such inspection, even if the deceased neglected the most ordinary precaution for his safety, is not within reason; nor would the requirement of such illumination be a reasonable regulation.

The cases cited by appellant are ones where knowledge of imminent danger was brought home to the company or conditions were present from which it was presumed. Air coupling is an exceedingly dangerous and absorbing occupation; authority and reason require that men thus engaged should be protected. The principles announced in Buehler v. Phila. & Reading Ry. Co., 280 Pa. 92, have no application here, except in so far as they emphasize the fact that a railroad, in distributing cars in a classification yard without light, signal or warning on the tracks where they had reason to expect the presence of other employees who were connected with such distribution, is answerable in damages if an injury occurs to them through such practice.

Of what avail would a signal or light on the approaching train be to a man under a car? There was a light near the front of the approaching train, but, so far as the deceased was concerned, a light or lights on the front of the train would have given no protection to him under the standing cars; he could not have seen it. Rules might have required a signal to be given, but it would have been meaningless to him, located as he was. It is useless to complain of the absence of rules when their

presence would give no protection. Furthermore, when McAvoy went under the cars, he knew they were to be coupled by impact. This is required under the provisions of the Act of Congress of March 2, 1893, chapter 196, section 2: Allen v. Tuscarora Valley R. R. Co., 229 Pa. 97. He had years of experience to teach him a very obvious thing,—the result of these couplings; and he also must have known, from the rumble on the rails, that cars were approaching those under which he was at work. No doubt he misjudged their distance. The court below was right in holding that there was no negligence shown through failure to establish rules requiring notice to be given, or providing lights.

Was the company otherwise liable through the neglect of a fellow servant, or was such risk assumed? We held, in Dutrey v. Phila. & Reading Ry. Co., 265 Pa. 215, 219-220, that "the employee assumes, as risk of his employment, such dangers as are normally and necessarily incident to his occupation, and a workman of mature years is taken to assume them whether he is aware of their existence or not; but risks of another sort, not naturally incident to the occupation, may arise out of the failure of the employer to exercise due care. They are the unusual, extraordinary and unexpected acts, and the employee is not to be treated as assuming such risks until he becomes aware of their existence, unless the act or risk is so obvious that an ordinarily prudent person would have observed and appreciated them: Seaboard Air Line v. Horton, 233 U. S. 492, 503; Jacobs v. Southern Ry., 241 U. S. 229, 235; Boldt v. P. R. R., 245 U. S. 441, 445; C. & O. Ry. Co. v. DeAtley, 241 U. S. 310, 315; Erie R. Co. v. Purucker, 244 U. S. 320; C. & O. Ry. Co. v. Proffitt, 241 U. S. 462, 468. It is only in a clear case that the question of the assumption of a risk is one of law for the court, and where there is doubt as to the facts, or as to inferences to be drawn from them, it becomes a question for the jury: Falyk v. Penna. R. R., 256 Pa. 397, and cases there cited. The burden of proof as

to the assumption of risk is on the defendant: Kanawha
& Mich. Ry. Co. v. Kerse, 239 U. S. 576, 581." See Sulli-
van v. Baltimore & Ohio R. R. Co., 272 Pa. 429; Buehler
v. Phila. & Reading Ry. Co., 280 Pa. 92. It was held in
Reed v. Director General, 258 U. S. 92, that the defense
of assumption of risk, however, did not extend to assum-
ing the risk of the negligence of a fellow servant. It is
unnecessary here to apply that rule, as the negligence
of the fellow servant is not shown. The engineer, in
placing the draft of cars against the standing cars, was
doing a usual task in the ordinary manner. There was
nothing extraordinary about it. It was the only way to
couple cars, as required by the act of Congress noted
above. The brakeman on the end of the shifting train,
as it approached the standing cars, performed his duty
in the usual manner. The conductor under whom de-
ceased worked issued no instructions to the shifting
crew nor to deceased which caused him to be placed in
this dangerous position. If it be conceded (which it is
not) that his duty required him to couple air hose in
standing cars such as here, we have all the employees,
aiding in making up the train, doing their work in the
ordinary manner, and, unless they or the company's
officer knew or had reason to know McAvoy was under
the train, there can be no neglect of a fellow servant.
There was no signal or other indication connected with
or about the work of McAvoy that would give notice to
the shifting train crew that he was at work, or that these
cars standing alone might have some person underneath
them. There was no light, customarily placed alongside
cars when work was being done about them, or other sig-
nal or device that would give notice that he was there, so
that, had the train come down regardless of these warn-
ing signs, appellant might well sustain a charge of neg-
lect. What we have said as to lights on the cars as they
approach applies here. Under the rules of the company,
McAvoy was not required to do this work unless directed
by the conductor. This is the effect of Rule 1086. As

stated, no such orders were given; consequently the charge of negligence of a fellow servant fails.

An effort was made to show a custom for brakemen to assist in making up a train. The evidence was clearly consistent with the foregoing rule, and insufficient to establish custom, but, even if sufficient, there was not the slightest indication whereby the shifting crew might suspect there was any person underneath cars standing alone in the darkness of night, without visible sign of anyone near them. Unless we should rule that brakemen should get under each car and make a personal examination to reveal the presence of persons coupling air, we could not hold the company liable. To so hold would be unreasonable.

The judgment of the court below is affirmed.