NOTE.—See Lewis's Estate, 30 Dist. R. 541.

---

## Fohl's Administratrix v. Reading Company.

*Master and servant—Injury sustained on way from work in employer's conveyance—Violation of employer's rules—Scope of employment—Assuming risk—Federal Employers' Liability Act.*

Where a railroad provides means of conveying its employees to and from the place of employment, and an employee, in disobedience of orders, joins with another employee in the use of a different method of conveyance, the employee loses his status as an employee in interstate commerce and the employer is not liable for injury to him caused by the negligent operation, by the fellow-employee, of the means of conveyance selected by him.

Trespass for personal injuries. Motion for judgment for defendant *n. o. v.* C. P. Dauphin Co., Sept. T., 1925, No. 1077.

*Beidelman & Hull,* for plaintiff; *John T. Brady,* for defendant.

NILES, P. J., 19th judicial district, specially presiding.—This is an action under the Federal Employers' Liability Law by plaintiff to recover damages for the death of her husband.

At the close of the evidence, defendant's request for binding instructions being refused, the case was submitted to the jury, who returned a verdict of $5000 for plaintiff. The motion for new trial having been withdrawn, there is left only defendant's motion for judgment *non obstante veredicto*.

Review of the record and consideration of the arguments and cases cited by counsel for the parties leads us to the conclusion that defendant was entitled to binding instructions, and is, therefore, now entitled upon the whole record to judgment in its favor *non obstante veredicto*.

Erdie L. Fohl, the deceased husband of the plaintiff, was, and for some time had been, in the employ of the defendant. He lived in Harrisburg and was engaged as mason foreman in the construction of a concrete bridge near

Graythorne, on defendant's line some forty miles west, over which the trains of the defendant ran in the conduct of business conceded to be interstate commerce. Fohl was taken to his place of work and at the end of each day returned to Harrisburg by the defendant.

Sept. 25, 1925, when Fohl and his co-workmen at the bridge had finished their day's work, he and Levi Nagle, a fellow-workman, boarded a small motor-truck, No. 475, operated by William Hetrick. Hetrick was a signal maintainer, whose duties on that day were at "S-X Tower," Shippensburg, which is about five miles westwardly from Graythorne Bridge. He lived east of the bridge on the way toward Carlisle Junction and Harrisburg. His general function was to see that the mechanical signals on a portion of defendant's line were kept in order.

Motor-car No. 475 was about five feet long, with a seat in the centre consisting of no more than just the top of the car, upon which the occupants could sit sidewise, and where the operator controlled the speed. The small truck was provided by the defendant for use of Hetrick as signal maintainer and with permission for him to use it also in going to and from his work. Hetrick left "S-X Tower" by permission of the operator to proceed eastwardly to Carlisle Junction at seven minutes after three in the afternoon. As he approached Graythorne Bridge, Fohl, standing on the track at the west end of the bridge, signaled him to stop. Hetrick stopped and Fohl boarded the car with Levi Nagle. Hetrick invited Starner, another workman, to ride, but he did not get on. About this time the large motor-truck No. 180, provided by the defendant to take the workmen from the bridge to Carlisle Junction, there to board a passenger train for Harrisburg, and by which the workmen had been carried in the morning from Carlisle Junction to Graythorne Bridge, was being prepared for the return trip. This was a gasoline motor-car with a seating capacity for twelve men, furnished by the defendant for transporting its workmen from Graythorne Bridge to Carlisle Junction; and the defendant's instructions to Fohl were to use it for that purpose for himself and his men, to connect at Carlisle Junction with the train intended to reach Harrisburg at 6.10. A freight train passed and was immediately preceding Hetrick's truck, No. 475, upon the same track. Motor-truck No. 475, with the three occupants, Hetrick, the operator, Fohl and Nagle, proceeded for about a mile and a-half, where Nagle stepped off at his home. From that point truck No. 475, with Hetrick and Fohl thereon, ran about seven miles. While Hetrick's attention was diverted in looking for Fohl's lost dinner-bucket, the truck, rounding a curve at a speed of about twenty miles an hour, crashed into the rear end of the freight train just as it had come to a stop. Fohl was injured, his death resulting shortly thereafter. Fohl, with Hetrick, who was also injured, was put in motor-truck No. 180, which reached that point shortly after the collision.

Among the rules of the defendant company, a copy of which was in the possession of Fohl at the time of his death, is: Rule 42. "Only employees in the performance of duty may be permitted to ride on motor-cars." And, under the head of Section Foreman, Rule 126, "They shall not allow their cars to be used except in the service of the company, and no one shall ride on them except employees in the performance of their duty, unless provided with a written order from proper authority," &c.

When Fohl boarded truck No. 475 at Graythorne Bridge, he exhibited no written order or pass, but he and Nagle were allowed by Hetrick to ride on that truck because of friendship of long standing. Once before Fohl had so ridden on the same truck with Hetrick.

There was no evidence that Fohl had any pass or written authority authorizing him to ride on truck No. 475 on this occasion. Hetrick testified: "He simply stopped me, and as a friend you would not turn him down. I knowed he was an employee for years, and I knew he had a pass, but I did not know whether it read to go on any train or any engine or truck." Uncontradicted evidence introduced by defendant was that Fohl's pass did not authorize his riding upon truck No. 475.

The theory upon which counsel for plaintiff would support the verdict might be valid except for the admitted facts that plaintiff's husband voluntarily and without necessity chose to ride on No. 475 without permission rather than wait a few minutes for the large truck, No. 180, provided by defendant to carry him home and which he had been directed to use.

Had he been on No. 180 and that truck had collided with the rear of the freight train because of the negligence of the operator, under the Federal Employers' Liability Act, the negligence of the fellow-servant might be considered the negligence of the master, because both servants might be held to be acting within the scope of their employment—Fohl in proceeding toward Harrisburg by the means provided and according to the directions of the master, and the negligent fellow-servant in operating according to his orders.

The argument is that because the employment of decedent continued after he had quit work at the bridge until he reached Harrisburg, the liabilities of defendant were the same, whether he obeyed his master's orders or not regarding the means provided to carry him home; that the defendant being under obligation to take him home, Fohl was warranted in using any means which he might select for that purpose, and, in ignoring the means furnished and in disobedience of orders, taking another means of conveyance, belonging indeed to defendant, but intended for an entirely different purpose; that because there was no evidence that the master on this occasion had ordered him not to board the signal maintenance truck, he could select it and ignore No. 180 and still be considered as acting within the scope of his employment in such sense as to make the master liable for the results to him of Hetrick's negligence, who allowed Fohl to ride with him without the permission of their common master.

This proposition upon which plaintiff's case depends is not tenable.

Fohl rejected the way provided by the defendant, and in disobedience of orders joined with another employee in an act not permitted by the master nor within the scope of the employment of either. So far as the rules of liability of the master for injuries to a servant within the scope of his employment are concerned, when Fohl stepped on No. 475, which defendant had not authorized, instead of using No. 180, which defendant had provided and ordered him to use in going home, he suspended his status of employee in interstate commerce and, when killed, was not engaged in his employer's work. We are of opinion that the case must be against the plaintiff, primarily because the undisputed evidence shows that the death of plaintiff's husband occurred while he was not acting expressly or impliedly according to the defendant's orders or within the scope of his employment. Also, it may with reason be held that when he declined the safe means provided and voluntarily took another not permitted, he assumed the risks incident to his own choice, and no rule of law requires defendant to be held liable for the result.

The duties and obligations incident to the relation of master and servant exist only so long as both are concerned in such conduct as may be reasonably considered as within the express or implied terms of the contract or employment.

An essential term necessarily is that the servant act according to directions and not contrary to known rules. While acting in disregard of his master's instructions, it is only just that he shall be considered to have absolved the master from the full measure of liability which exists while the service is being performed according to the master's plans. This conclusion we believe to be in accord with the decisions of the Federal courts: Chesapeake & Ohio Ry. Co. v. Nixon, decided by U. S. Supreme Court, May 24, 1926, 70 Law Ed. Adv.; Krysiak v. Pennsylvania R. R. Co., Circuit Court of Appeals, Third Circuit, decided Feb. 7, 1921, opinion by Wooley, Circuit Judge, 270 Fed. Repr. 758; and is in harmony with the decisions in Pennsylvania: Reed, Admin'x, v. Director General of Railroads, 267 Pa. 86; McAvoy, Admin'x, v. Phila. & Reading Ry. Co., 283 Pa. 133.

And now, to wit, March —, 1927, the rule issued upon defendant's motion for judgment non obstante veredicto is made absolute, and judgment is entered in favor of the defendant and against the plaintiff non obstante veredicto, and the plaintiff is granted an exception to the action of the court in this regard.

From Homer L. Kreider, Harrisburg, Pa.