*Negligence — Railroads — Federal Employer's Liability Act — Physical facts — Evidence — Custom—Risk of employment—Contributory negligence.*

1. If oral evidence of an accident is shown by proven physical facts to be untrue, such evidence must be disregarded.

2. Where the undisputable physical facts, as indicated by actual measurements, maps or photographs, negative the existence of facts ordinarily presumed, the case is for the court and not for the jury to pass upon.

3. In an action by a trainman against a railroad company, his employer, for injuries sustained in a yard, certain rules of the company, as to the operation of trains, are immaterial, where it appears that the rules in question apply to the operation of trains on the main line and not in yards.

4. In such a case it is not proper to admit evidence of a custom to sound a whistle when a train was backed, where it appears that plaintiff was the only witness to the existence of such custom.

5. Evidence of such a custom must be certain, reasonable, distinct, uncontradicted, continued and so notorious as to be probably known to all parties to be controlled by it.

6. To establish a custom, there must be numerous repetitions of the act, extending over a considerable period of time.

7. The mere statement that it is customary to do a thing does not clothe the act in the garb of a custom as understood in law; and this is especially so where the act has the effect of changing a rule of company practice or of law.

8. Where a trainman injured by a backing train in a railroad yard testifies that no signal was given, but this is contradicted by all the men operating the train, and the evidence of the plaintiff himself shows that the noise at the time was such as to prevent him from hearing a whistle or bell, his evidence as to the absence of signals will be without avail.

9. A trainman employed in a railroad yard and engaged in interstate commerce traffic, assumes the ordinary risks of his employment when obvious or fully known.

10. If, in such case, as a matter of law, the evidence shows lack of negligence or assumption of risk, it is the duty of the trial court to so hold.

344 CARLO *v.* BESSEMER & LAKE ERIE R. R. CO., Aplnt.

Argued March 14, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 71, March T., 1928, by defendant, from judgment of C. P. Allegheny Co., Jan. T., 1926, No. 623, on verdict for plaintiff, in case of Thomas Carlo v. Bessemer & Lake Erie Railroad Co. Reversed.

Trespass for personal injuries. Before GOLLMAR, J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $18,500, on which judgment was entered for $15,000. Defendant appealed.

*Error assigned,* inter alia, was order overruling defendant's motion for judgment n. o. v., quoting record.

*George D. Wick,* with him *Reed, Smith, Shaw & Mc-Clay,* for appellant.—Appellee's story of accident was impossible and contradicted by physical testimony: Grimes v. R. R., 289 Pa. 320; Cubitt v. R. R., 278 Pa. 366.

No negligence was shown on part of appellant: Keller v. Ry., 214 Pa. 82.

Appellee assumed the risk: Curtis v. R. R., 267 Pa. 227; Davis v. P. & R. Ry., 276 Fed. 187; Chesapeake & Ohio Ry. v. Nixon, 271 U. S. 218.

*J. Thomas Hoffman,* for appellee.—The case at bar is ruled squarely by the following cases: Waina v. Penna. Co., 251 Pa. 213; Dutrey v. R. R., 265 Pa. 215; Krall v. R. R., 287 Pa. 332; Chesapeake & Ohio R. R. v. De-Atley, 241 U. S. 310; Erie v. Purucker, 244 U. S. 321.

OPINION BY MR. JUSTICE KEPHART, March 7, 1928:

Appellee was a freight brakeman. The train on which he worked, in going north, stopped at Branchton to take on coal and water. Branchton, within defined limits, was duly designated as a yard and was governed by yard

rules relative to train and engine or "switching" movements.   It consisted of five tracks, two main tracks, two sidings, and a coaling plant-supply track, with siding and crossover switches.   A coaling tipple spanned the tracks.

When plaintiff Carlo's train reached the tipple, there was another train on the southbound main track that had stopped north of the tipple.   The engine and a box car of that train had been uncoupled and had moved down the southbound main track to an ash pit beyond the point of the switch leading into the southbound siding.   After leaving the ash pit, it was the intention to come back on the siding to have the box car weighed. The place where the engine and car stood, and where Carlo saw it, was 440 feet from the end nearest to the tipple, where the accident here complained of occurred. Carlo left his train on the northbound track and proceeded toward a telephone booth a little north of the coal tipple where conductors were accustomed to receive orders.   He was struck at the tipple by the engine and box car coming back on the southbound siding. This action by Carlo was under the Federal Employer's Liability Act.   A verdict was recovered in the court below and this appeal followed the entry of judgment thereon.

The most important consideration is Carlo's story of how the accident occurred.   It is related deliberately with precision and without possible deviation as to detail of facts; its incredibility, as being contrary to human possibilities or physical facts, is apparent.   Appellee, on leaving his train on the northbound track, whether he left from the caboose or the middle of the train, was required to cross the six-foot space between the north- and southbound main tracks, the southbound main track and the six-foot space between it and the southbound siding.   He must walk north to the tipple. He says that, as he walked up towards the tipple, on the six-foot space between the north- and southbound

main tracks to a point 75 or 100 feet south of the tipple, he there looked both ways and saw the engine and box car lying on the ash pit south of the tipple. This was just south of the switch point; in feet, the nearest point was 440 feet from the tipple. He saw the switch lamp, where the engine and box car stood, showing green, indicating it was not thrown for the side track movement. Carlo says he then crossed the southbound main track, diagonally proceeding toward the tipple, reaching the southbound siding at a point 10 feet south of the tipple. Before stepping on the siding, he again looked both ways; the switch lamp was still green, and the engine and car still standing at the ash pit. He then walked 10 or 15 steps in 10 or 15 seconds, and was struck by the box car, which had been pushed from the ash pit to the tipple in just that many seconds. In other words, in 10 or 15 seconds at most, defendant's servants must unlock, open and throw the switch, signal the engine and box car to move backward, and it must move a distance of 440 feet, strike appellee and then stop within less than the length of itself. The uncontradicted evidence showed it would take at least a minute to open the switch, but, assuming it was one-tenth of that time, in this day of steam motive power it would be physically impossible, in the time remaining after the switch was thrown, for the engine to start from a dead stop and proceed 440 feet on the siding to the point where appellee was walking, particularly as the only evidence as to speed showed that the train was not running over ten miles an hour.

We have repeatedly stated that, if oral evidence is shown by proven physical facts to be untrue, the former must be disregarded: Cubitt v. New York Central R. R. Co., 278 Pa. 366, 371; Hazlett v. Director General, 274 Pa. 433. But it is urged that in all such cases the jury must pass on the question, and, when the credibility of witnesses is alone involved, this statement of the legal rule is correct: Holzheimer v. Lit Bros., 262 Pa. 150; Shaughnessy v. Director General, 274 Pa. 413.

But where the indisputable physical conditions, as indicated by actual measurements, maps or photographs, negative the existence of the facts ordinarily presumed, this is not true: Hill v. P. R. T. Co., 271 Pa. 232; Seiwell v. Hines, 273 Pa. 259; Cubitt v. New York Central R. R. Co., supra.

We need not rest our conclusion, however, on the foregoing circumstances. We are satisfied from an examination of the record that appellee has failed to show any negligent act on the part of the company. The inquiry must be directed to ascertain what the defendant failed to do that it should have done, or what it did that it should not have done. The statement of claim avers that the negligence consisted of backing the train without warning, without proceeding cautiously and in failing to keep a sharp lookout ahead. As to the first of these allegations, appellee offered in evidence the rules of the company for the purpose of showing that, when a train is backed, three short blasts of the whistle must be given; but an examination of these rules shows that they govern main line movements, and this was a yard switching movement. To further sustain his position, appellee testified that it was the custom to sound the whistle when a train was backed. Appellee was the only witness who so testified, and his testimony does not support a custom; it, at best, was merely a conclusion. It failed to show a custom that was certain, reasonable, distinct, uncontradicted, continued and so notorious as to be probably known to all parties to be controlled by it: Ambler v. Phillips, 132 Pa. 167; Adams v. Pgh. Ins. Co., 95 Pa. 348; Corcoran v. Chess, 131 Pa. 356; Brown v. American Steel Foundries, 272 Pa. 231, 236. To establish a custom, there must be numerous repetitions of the act, extending over a considerable period of time. Appellee was a brakeman who moved from place to place with his train; whether he had ever aided in another movement similar to the one in question at this yard, or had seen others do it, does not appear by this record.

There was no evidence of acts on which to base a custom. The mere statement that it is customary to do a thing does not clothe the act in the garb of a custom as understood in law, precipitating a legal duty governing the conduct of persons in relation to a given matter, especially where the act has the effect of changing a rule of company practice or of law. At best, it would be a local custom, pertaining to this particular yard, and, as it would conflict with the ordinary rule or duty as to yards, it must be shown to be actually known to all of the employees who deal with it: Miller v. Wiggins, 227 Pa. 564, 569. As the custom was supposed to govern the act of all employees, it was not shown that they knew, or that circumstances existed from which they should have known, of the proposed custom. Other witnessess in this case denied its existence. See Albus v. Toomey, 273 Pa. 303, 306.

In Dutrey v. Phila. & R. Ry., 265 Pa. 215, where we held a custom to give warning could exist in yard limits, the facts clearly demonstrated the necessity for the ruling. In Aerkfetz v. Humphreys, 145 U. S. 418, it was held that the ringing of bells and sounding of whistles by passing trains and yard engines would tend to confuse the workmen, and the failure to give such warning did not constitute negligence. This was reiterated in Toledo v. Allen, 48 Supreme Court Reporter, 215, where it was held the failure to warn by bell or whistle in a yard would not authorize a finding of negligence, unless the injured person was exposed to unusual danger, which was the case in Dutrey v. Phila. & R. Ry., supra.

But the failure to observe the custom, if one existed, or to give warning, was not the cause of the accident. Plaintiff testified that, just before and at the time he was injured, the coal falling into the engine tender through steel chutes made a "roaring noise," and the "engine [taking coal] was popping off,"—"steam that comes out of the safety valves,"—making a "roaring noise." The exhaust from a gas engine, used to hoist the coal eleva-

tors, and another used to pump water, made "so much noise around there that you couldn't hear yourself talk," and he heard all this noise as "he was walking toward the tipple." In the face of such testimony, his evidence that no warning was given could not be considered. The engineman and all others connected with the operation testified that not only was the whistle blown, but the bell was ringing all the time the car was being moved back.

When appellant's movement started back, a brakeman was placed on the box car that preceded the engine. The fireman was in his position and the engineer at his post. There is not the slightest evidence that these employees did not perform their full duty. The fireman was called as plaintiff's witness, and he tells how the accident happened; he states that appellee walked on the six-foot space until near the pier, when he deliberately stepped in front of the moving train. A more graphic picture is furnished by the brakeman on the end of the car, who saw Carlo just ahead, walking in the six-foot space; as the car approached, Carlo stepped in front of it, without the slightest warning. Ziegler, the brakeman, immediately cried, "Look out, Tommy," and signaled the engineman to stop. There is not the slightest evidence that either Ziegler or the fireman did not keep a sharp lookout ahead. They could not have anticipated that Carlo would suddenly step in front of the train; they naturally assumed, as they had a right to, that he would remain in a place of safety. The testimony of these witnesses shows clearly that Carlo was at fault, and his unfortunate accident must be attributed to his own carelessness. His duties at the telephone booth, whatever they might have been, did not so occupy his mind as to prevent him from taking the most ordinary precaution for his safety to see before stepping on the track whether it was safe or not. His only task at the time was to walk from his train to the booth. It was not incumbent on appellant to so regulate its trains as not to

strike their employees under any circumstances. It was not an insurer of their safety.

Appellee assumed the risk of dangers incident to his employment. He was of mature years, and had been employed for some time by this company. He knew generally of the duties devolving on brakemen. The switching movement was an ordinary one, with nothing unusual about it. The engine and car was moving at a reasonable rate of speed, but, in every yard, employees must be aware that cars and engines move in all directions at irregular intervals. It is one of the usual incidents of such places, and employees assume the risk of accidental hazards incident to such employment. See Curtis v. Erie R. R., 267 Pa. 227, 231; Ches. & Ohio Ry. v. Nixon, 271 U. S. 218. The Act of Congress under which plaintiff seeks to recover took possession of the field of liability of carriers for injuries sustained by their employees while engaged in interstate commerce. This case is governed by that act and the principles of the common law as applied by the courts. Plaintiff can not recover unless it appears that defendant was negligent, and, except as specified in section 4 of the Employer's Liability Act, not then if it appears the employee assumed the ordinary risks of his employment when obvious or fully known; if, as a matter of law, the evidence shows negligence or an assumption of risk, it is the duty of the trial court to so hold. See Toledo v. Allen, supra, and cases there cited.

The judgment of the court below is reversed and is here entered for defendant.