Griffith et al. *v.* Atlantic Refining Co., Appellant.

Argued October 6, 1931. Before FRAZER, C. J., WALL-ING, SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*W. Walter Braham,* of *Aiken & Braham,* with him *William D. Cobau, J. Glenn Berry* and *Wright & Rundle,* for appellant.—There was no evidence which justified the court in submitting to the jury the question whether the system for the distribution of gasoline installed by defendant was defective: Hogue v. R. R., 85 Pa. 293; Pittsburgh v. Construction Co., 272 Pa. 118; Brashear v. Traction Co., 180 Pa. 392; Bruggman v. York City, 259 Pa. 94; Boggs v. Tea Co., 266 Pa. 428.

Defendant was not liable as a matter of law for Hudson's act in installing the pipe: Dunne v. R. R., 249 Pa. 76; Guille v. Campbell, 200 Pa. 119; Towanda Coal Co. v. Heeman, 86 Pa. 418.

Defendant was not liable as a matter of law for the improper construction of distributing system, including the pipe in question: Fitzmaurice v. Fabian, 147 Pa. 199; Godley v. Hagerty, 20 Pa. 387; Scalise v. Venzie, 301 Pa. 315.

There was no evidence that either of the alleged negligent acts of defendant company were responsible for plaintiff's injury: Stringert v. Twp., 179 Pa. 614; Alexander v. Water Co., 201 Pa. 252; Freedman v. Wager, 73 Pa. Superior Ct. 180.

It is a well established rule of law that the jury cannot fix liability by basing a presumption on a presump-

tion: Gorman v. Brahms Sons, 298 Pa. 142; Benson v. Heating Co., 188 Pa. 614.

*A. M. Shumaker*, with him *T. W. Dickey*, for appellees.—Defendant's negligence was a question for the jury: Koelsch v. Phila. Co., 152 Pa. 355, 362; Shirey v. Gas Co., 215 Pa. 399; Gudfelder v. Ry., 207 Pa. 629.

The case does not come within the exception of Curtin v. Somerset, 140 Pa. 70; Fitzmaurice v. Fabian, 147 Pa. 199; Presbyterian Congregation v. Smith, 163 Pa. 561; Stubbs v. Light Co., 84 Pa. Superior Ct. 1; Scalise v. Venzie, 301 Pa. 315; Grodstein v. McGivern, 303 Pa. 555; Godley v. Haggerty, 20 Pa. 387; Carson v. Godley, 26 Pa. 111.

Whether the negligence of defendant was the proximate cause of the injuries sustained was a question for the jury: Hartman v. Gas Co., 210 Pa. 19; Koelsch v. Phila. Co., 152 Pa. 355; Shirey v. Gas Co., 215 Pa. 399; Shaughnessy v. R. R., 274 Pa. 413.

Defendant was liable for the failure of its engineer to install a gasoline dispensing system that was reasonably safe: McDermott v. Ice Co., 44 Pa. Superior Ct. 445.

OPINION BY MR. JUSTICE SCHAFFER, December 4, 1931:

A recital of the essential facts necessary to an understanding of this case, leaving out all extraneous matters, greatly simplifies it. Runyan Brothers, on land which they owned, had erected a gasoline filling station. They entered into a contract with appellant, Atlantic Refining Company, under which it agreed to lend and install the necessary outfit to store and supply gasoline, in consideration of Runyan Brothers' undertaking to sell only that furnished by it. The equipment consisted in part of four one thousand gallon tanks, sunk in the ground, located alongside the filling station, in which the gasoline supplied from tank wagons of appellant was stored. The tops of the tanks were below the surface of the ground. Above each of them was a brick compartment

three feet square and three feet deep, in which was the pipe used in filling the tank. The pipe was permanently attached in the top of each of them. These filling pipes were capped except when gasoline was being run into the tanks. On top of each compartment was a manhole cover, with a hole in it to enable it to be lifted.

The work of installing the appliances was in charge of defendant's engineer, Hudson by name. When he was putting in the tanks, Runyan Brothers suggested to him that he connect each of the four compartments with the other by means of a pipe one and a half inches in diameter, and that he run such a pipe from the compartment nearest the building into its cellar. This he undertook to do and Runyan Brothers furnished the pipes which he installed. Their purpose was to enable the manhole covers to be locked from inside the cellar by means of a rod run through the pipes, all of which were in line, and through rings in the manhole covers. These pipes were not shown on the plans furnished by defendant for the installation of the equipment and from which Hudson worked. The locking device was never used, nor could it ever have been used, because of insufficient space in the cellar of the filling station for inserting and withdrawing an iron rod. Who was responsible for the pipe which ran from the nearest compartment into the cellar, whether appellant or Runyan Brothers, becomes a very material question in the case.

On July 16, 1927, a hot day, at two o'clock in the afternoon, one of appellant's gasoline delivery wagons drew up at the filling station, and by means of a hose leading from it to the intake pipe in the compartment over the tank nearest to the building, proceeded to fill that receptacle with gasoline. The minor plaintiff, an employee of Runyan Brothers, who observed the operation, testified that some gasoline, how much does not appear, was spilled into and remained in the compartment after the manhole was closed. At nine o'clock that night, seven hours later, he was directed to go into the

cellar of the building and burn some waste materials in a stove located there. Some of it apparently had been used for wiping up gasoline. The stove was fireless. He placed some of the waste in the stove, put the box in which he had carried it on the floor, struck a match, and thereupon an explosion occurred, which threw him back against the cellar wall and severely burned him. To recover damages for the injuries which he sustained this action was brought against Runyan Brothers and the appellant. The court held it not maintainable against Runyan Brothers, because they were liable for workmen's compensation. The case proceeded to trial against appellant, resulting in a verdict against it.

There is no question that the explosion was from gasoline in the cellar. Appellant's theory on the trial was that the gasoline was on the waste which was put in the stove and testimony was adduced to support this. The jury refused to accede to this view and by their verdict concluded the gasoline came into the cellar through the pipe from the compartment into which it had been spilled in the afternoon. There was testimony supporting this conclusion, that gasoline will vaporize, particularly on a hot day, that so vaporized it would pass from the compartment through the pipe into the cellar and there remain, and that, if in sufficient quantity, it would, with the air therein, make an explosive mixture, which could be exploded by lighting a match in the cellar. There was also evidence that after the explosion the fumes of gasoline were smelled at the cellar end of the pipe. Who was responsible for the pipe? Appellant's counsel, who ably argued the case at our bar, there and by printed brief contends, not the appellant, but Runyan Brothers; that they furnished the pipe and arranged for its installation without the knowledge or assent of appellant, and not in pursuance of any plans formulated by it; that in installing it Hudson was acting, not for appellant, but for Runyan Brothers, whose appliance it was; that it was no necessary part of the equipment fur-

nished and installed by appellant, but was for the use and convenience only of the owners of the building. The further argument is made that appellant, after installing the appliances, was in the same legal situation as would exist where a building contractor has turned over a completed building to its owner and injury has occurred to some one as a result of some happening about the building, in which situations the rule of the contractor's nonliability has been applied, as in Curtin v. Somerset, 140 Pa. 70, and the cases which have followed it: Fitzmaurice v. Fabian, 147 Pa. 199; First Presbyterian Congregation v. Smith, 163 Pa. 561; Scalise v. F. M. Venzie & Co., Inc., 301 Pa. 315; Grodstein v. McGivern, 303 Pa. 555. It is to be noted that the rule laid down in Curtin v. Somerset, has been very much modified by the decision in Grodstein v. McGivern. Here, however, we have a different situation; while it is true appellant installed the appliances, it continued to retain ownership of them, and they were only lent to Runyan Brothers. Moreover, appellant continued to use them by putting gasoline into them and it seems to us that when it filled the tanks with this dangerous substance, it was bound to make sure that they were safe receptacles for it. We also conclude it was bound to see that they were so constructed and installed by it in the first instance as to be reasonably free from danger when used.

Appellant's counsel suggests that, if it was liable at all, it was liable because of the negligent construction of the system, and that there was no testimony, either by express words or otherwise, that the installing of the pipe created a dangerous situation, or was not in accordance with the approved standards of installation; that the installation of the pipe did not create a storage system inherently imperfect or dangerous. This argument might prevail if the pipe and the compartment had merely been installed by the defendant and some one else had been called upon to fill the tanks, but here the two things are united: the appellant put in the appli-

ances, and it spilled the gasoline in the compartment; there is evidence that the gasoline so spilled would pass from the compartment into the pipe and through the pipe into the cellar.

It is also argued that the defendant was not liable as a matter of law for Hudson's act in installing the pipe, the position taken being that the installation of the pipe by Hudson was not within the scope of his employment. We think, however, this position is unmaintainable, because the appellant was bound to install appli-ances that were reasonably safe and was bound to make certain after their installation that they were so. It is responsible for whatever Hudson did in installing the appliances and whether he put in the pipe which connected the compartment and the cellar by. appellant's direction is not material. Any faulty construction by him it was responsible for, just as it would have been if he had left a hole in one of the tanks and gasoline had escaped and exploded.

This is not a case, as appellant's counsel contends, in which the injury to plaintiff may be due to several causes as to some of which the defendant is not liable, such as Alexander v. Penna. Water Co., 201 Pa. 252, and the many cases following it, or in which presumption must be piled upon presumption to make a case for plaintiff, as in Gorman v. Brahm's Sons, Inc., 298 Pa. 142, and cases preceding it. Here, it is conceded that the explosion was of gasoline. If the gasoline came through the pipe, the defendant was liable. There was testimony which the jury believed which warranted the conclusion that it did come through the pipe and which justified the finding, against defendant's theory, that the explosion did not come from the stove. Nor do we think there is any question but that the negligent installation and the gasoline fumes passing through the pipe were the direct and proximate cause of the plaintiff's injuries, despite appellant's elaborate argument to the contrary.

It is urged upon us that "the trial judge went outside the evidence to sustain his contention that the defendant might have caused the accident." It is said in this connection that the amount of gasoline which was spilled in the compartment was not shown and the court permitted the jury to infer that sufficient was spilled, which when vaporized filled the cellar with the explosive mixture. That the cellar contained the explosive mixture from some cause is undeniable, because the explosion occurred. If the vaporized gasoline came through the pipe, and there was evidence that it could and did, then there was enough spilled, however much it was, to cause the explosion. It is said there was an opening in the manhole practically as large as the pipe through the wall, and it is intimated that the vaporized gasoline might have escaped from the compartment through this hole, and it is complained that the court assumed the fact in its opinion discharging the rule for judgment and for a new trial, that gasoline vapor is heavier than air, and thereby would be more likely to come through the pipe, which was lower than the manhole, than through the hole in this covering. We think the court could assume this fact, which is chemically and scientifically a matter of common knowledge, for the purpose of buttressing its conclusion that the verdict was warranted, just as courts may assume other facts of well known scientific import. In Fredericks v. Atlantic Refining Co., 282 Pa. 8, 15, we adverted to this fact.

We cannot agree with the assertion of appellant that the question of defendant's liability for the negligent act of Hudson was improperly decided by the court as a matter of law when it was a question of fact for the jury. In our view, the court was correct in saying to the jury that the defendant was bound to install a reasonably safe system and that Hudson as its employee was held to this duty and the defendant was liable for whatever he did. It had sent him there to install the entire

system and cannot absolve itself from liability for whatever he did as its representative in this undertaking.

Some point is made about the cross-examination of a witness of defendant as to matters not raised in his examination in chief. This was of small moment, and, even if erroneously permitted, which we do not determine it was, would not justify a reversal of the case.

The assignments of error are overruled and the judgment is affirmed.