## Fritsch, Appellant, *v.* Atlantic Refining Co.

Argued January 26, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*Leon M. Levy,* with him *John M. Kelly* and *R. L. Levy,* for appellant.—The driver was negligent in failing to inspect the storage tank: Fredericks v. Refining Co., 282 Pa. 8; Koelsch v. Phila. Co., 152 Pa. 355, 362.

Defendant was negligent because of violation of the regulation of the state fire marshal: U. S. v. Grimaud, 220 U. S. 506, 517, 31 Sup. Ct. 480; Covey v. U. S. (D. C.), 263 Fed. 768, 775; Caha v. U. S., 152 U. S. 211, 221; Drake v. Fention, 237 Pa. 8; Stehle v. Machinery Co., 225 Pa. 348; Cohen v. Bank, 262 Pa. 76.

*W. S. Diehl,* with him *John H. Stone, Oscar H. Price* and *A. M. Lucks,* for appellee.—The driver was not neg-

ligent in failing to inspect the storage tank: Fredericks
v. Refining Co., 282 Pa. 9, 16-17.

Appellee was the invitee of the proprietor of the ga-
rage: Kapuscianski v. Coal & Iron Co., 289 Pa. 388,
391; Sinn v. Savings Bank, 300 Pa. 85.

OPINION BY MR. JUSTICE KEPHART, March 14, 1932:

The main floor of the garage where appellant's hus-
band was employed fronted on Costello Court, in Scran-
ton; the basement was ten feet below, and had an open-
ing on a street in the rear, the grade of which was
considerably lower than that of Costello Court. The
basement was reached from the main floor by a flight of
steps. A filling station was conducted in connection
with the garage, and gasoline was bought from appel-
lee, the Atlantic Refining Company. A storage tank,
leased from appellee and used by the owners of the ga-
rage for over a year at the time of the accident, was
sunk some two feet below the surface of the concrete
floor of the basement. This tank had a short measur-
ing pipe which was flush with the floor of the basement
and secured by a metal cap. The amount of gasoline
stored in the tank at any particular time could be deter-
mined by inserting a stick in the measuring pipe.

The tank was filled through a pipe which passed under
the concrete floor, then along the brick wall of the build-
ing, and through it to a point outside on Costello Court
some fourteen feet from the storage tank. Inside the
building in the basement, some fourteen feet from the
measuring pipe and twenty-six feet from the point where
the intake pipe enters the tank, there was a coal boiler
furnace in which a fire was burning at the time of the
accident.

Appellee's driver, on the day of the accident, con-
nected the hose of the tank truck with the filling pipe
on Costello Court. While the driver was pumping gaso-
line into the storage tank below, appellant's husband
was heard shouting from downstairs that the gasoline

was overflowing in the basement and to cut off the supply from the truck. The driver did so, but in the basement a fire of dangerous proportions had already broken out. Later, deceased was found dead, having been severely burned. He was lying across the bumper of one of the cars as though overcome in attempting to escape. The driver was likewise seriously burned when he rushed down into the basement to ascertain the trouble.

There was no other point at which gasoline could escape from the tank, except at the measuring pipe. Several witnesses testified that six or eight gallons must have escaped at this point, since a stream of flaming liquid was observed flowing some sixty feet across the floor of the basement, through the yard, and into the gutter of the street. The fire no doubt was caused by vaporization of the gasoline coming in contact with the blazing fire in the furnace.

One of plaintiff's witnesses testified that, at the direction of Sprague, his employer, he removed the cap on the measuring pipe shortly after one o'clock on that day and, while engaged in measuring the gasoline in the tank, was approached by deceased and told he was using the wrong stick. He then replaced the cap, on being assured by deceased that he would see to the measuring himself. There was no evidence as to who took the cap off the measuring pipe, but there was testimony that deceased himself often measured the contents of the tank to determine the supply needed. A day or so later, the cap was found in the yard behind the garage, but how it got there or who put it there was not explained. There was some testimony that appellee's drivers in daily delivering gasoline would descend to the basement to measure the amount then in the tank, and replace the cap before putting any gasoline into the tank. On the other hand, another witness testified that the proprietor's custom was to have the amount in the tank measured by himself or one of his own men and then order from defendant what gasoline was needed. This method would serve

to check the quantity delivered as well as to determine the amount needed. The testimony does not show that on this particular occasion any specific amount was ordered or that defendant's driver went down to the basement to ascertain if the cap was on the measuring pipe before he attempted to fill the tank. To do so, the driver would have had to pass through the upper floor of the garage, and then descend to the basement level from steps leading down from the porch at the rear.

Appellant, against whom a compulsory nonsuit was entered in the court below, contends that the driver was under a duty to inspect the storage tank and ascertain whether it was safe to be filled before attempting to fill it. Had he done so he would have found the cap off and that it was unsafe to fill the tank. Generally speaking, no duty rests, on a person who delivers gasoline, to inspect the premises where a storage tank is located before making delivery to the place provided for that purpose; hence appellee's employee was under no duty to inspect the premises where this storage tank was located before making delivery. It is true there was a duty in this case imposed on the driver by his employer to ascertain how much gasoline was sold, but this would not charge him with the duty of making such inspection.

Gasoline is a dangerous substance and persons handling it are held to a high degree of care. But the stringency of this rule cannot affect the person handling it where no facts are shown to connect him with a negligent act. A person delivering gasoline will be held liable for an accident through negligent delivery of it at the place of intake provided by the proprietor of the garage: Griffith v. Atlantic Refining Co., 305 Pa. 386. But since in the present case there was no evidence to show this was not done in a reasonably prudent manner, and since the accident was not caused by putting the gasoline in the intake pipe, defendant was not negligent in failing to investigate the premises further to ascertain whether the negligence of another had cre-

ated a dangerous condition: Fredericks v. Atlantic Refining Co., 282 Pa. 8; Wagner v. P. R. T. Co., 252 Pa. 354; Weiss v. Pitts. Rys. Co., 301 Pa. 539. While these cases advance this thought to relieve plaintiff of contributory negligence, the converse of the rule will apply to relieve defendant of negligence.

Furthermore, even if there had been a duty to inspect, the mere fact that the cap was off the measuring pipe when the gasoline was actually delivered would not be sufficient to charge appellee with negligence, for there is not a line of evidence to show that it had not performed that duty and that meanwhile the cap might have been removed by someone else. The facts disclosed by the testimony indicate that the cause of the accident was the negligence either of deceased or of some other of Sprague's employees, in failing to replace the cap on the measuring pipe. Appellee was under no duty to anticipate and guard against any negligence on the part of the proprietor or any of his employees: Fredericks v. Atlantic Refining Co., supra. As stated in 45 Corpus Juris, page 705: "One is not under a duty of anticipating negligence on the part of others, but, in the absence of anything which gives or should give notice to the contrary, a person is entitled to assume, and to act on the assumption, that others will exercise ordinary care for their own safety." See Watson v. Lit Bros., 288 Pa. 175.

Section 6 of the regulations of the Pennsylvania State Police Bureau of Fire Protection, adopted pursuant to the Act of April 27, 1927, P. L. 450, providing that gasoline shall not be delivered "within dangerous proximity to open flame or fire," is not in point. The delivery was not made in dangerous proximity to an open fire, but at a point above and outside the basement where the fire was burning in the furnace, and thirty feet beyond a brick wall.

A review of the evidence is convincing that the compulsory nonsuit was properly granted.

Judgment affirmed.