Doyle, Admrx., et al., Appellants, *v.* Atlantic Refining Company et al., Appellants.

Argued April 18, 1947. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*James H. McHale* and *James F. Masterson,* for plaintiffs.

*Charles I. Thompson,* with him *Richardson Blair* and *Ballard, Spahr, Andrews & Ingersoll,* for Atlantic Refining Company, defendant.

*Frederick L. Fuges,* with him *Frank R. Ambler,* for Brucker and Rybas, defendants.

*James McG. Mallie,* with him *Walter B. Gibbons,* for Hill-Chase & Company, defendant.

OPINION BY MR. JUSTICE PATTERSON, May 26, 1947:

Catharine Doyle, administratrix, substituted for James J. Doyle, deceased, and Russell Girton, appellants in Appeals Nos. 65, 70, 72, 74, and 69, 71, 73, and 75, respectively, instituted this action in trespass against The Atlantic Refining Company, appellant in Appeals Nos. 47 and 66, Hill-Chase & Company, William Brucker, appellant in Appeals Nos. 67 and 76, Walter Rybas, ap-

pellant in Appeals Nos. 78 and 79, to recover damages for injuries sustained as a result of a gas explosion which occurred on June 3, 1941, on premises owned by Brucker and Rybas located on the southeast corner of Richmond and Ontario Streets in Philadelphia. The City of Philadelphia was joined as an additional defendant by Brucker and Rybas but was subsequently dismissed. The case was tried twice. At the first trial a juror was withdrawn on plaintiffs' motion because of erroneous exclusion of evidence. Upon the second trial a jury returned a verdict in favor of Catharine Doyle, administratrix, and Russell Girton, against Atlantic, Brucker and Rybas. A verdict was rendered in favor of Hill-Chase & Company. Motions for a new trial and judgment *non obstante veredicto* were filed by Atlantic, Brucker and Rybas, and for a new trial by plaintiffs as regards Hill-Chase & Company. The court below dismissed all motions for judgment *non obstante veredicto* but granted a new trial to Atlantic, Brucker and Rybas. Appeals of Atlantic, Brucker and Rybas are from the judgment of the court below refusing their motions for judgment *non obstante veredicto*. Plaintiffs appeal from the refusal of their motions for a new trial as to Hill-Chase & Company and from the granting of new trials to Atlantic, Brucker and Rybas.

Brucker and Rybas, in 1928, purchased premises located on the southeast corner of Richmond and Ontario Streets, Philadelphia, and constructed a garage thereon. On September 1, 1936, the premises were leased to Hill-Chase & Company who used said premises as a steel warehouse and conducted business thereon until October 6, 1940. Said lease was terminated April 4, 1941. The evidence shows that the premises were leased to the City of Philadelphia on May 28, 1941, although the lease was dated May 5, 1941, and possession taken May 9, 1941. The accident occurred June 3, 1941.

When Brucker and Rybas constructed the garage on the premises in 1928, two large underground tanks were

installed beneath the concrete floor of the building. From each tank there was a vent pipe running underground to a point on the Ontario Street sidewalk pavement, and extending vertically along the wall of the building 3 feet above the ground where the two pipes were joined together by a manifold. From this point a single pipe extended along the wall, to a point above the roof line. Other pipes led from the tanks to the Richmond Street curb where a gasoline pump was erected. The tank, pipes, and other fittings involved at that time were contained in a draft prepared by Atlantic. It is conceded that the joining of the vent pipe by the manifold in the original installation was proper at that time because both tanks were designed for the storage of gasoline.

Brucker and Rybas, in 1934, purchased and had installed an oil burning unit connected to one of these tanks by two small copper pipes which run beneath the floor of the building to the wall of the basement heater room, along the wall to the floor, and under the floor to the connecting points with the oil burning unit. One of the tanks formerly used for gasoline was used to store fuel oil to supply the oil burner. When the oil burner unit was installed, no change was made in the manifold vent. Atlantic, at no time, supplied the premises with fuel oil. On or about January 1, 1941, Hill-Chase & Company, with the consent of Brucker and Rybas, caused the oil burner unit to be removed from the heater room and delivered to the landlord at a place off the premises.

On June 3, 1941, the City of Philadelphia had in its employ James J. Doyle, a pipefitter, and Russell Girton, a sheetmetal worker and truck driver. They were directed to go to the cellar room on the premises in question and locate a water pipe to be used in the installation of a shower bath for employees of the City's Bureau of Street Cleaners. The heater room, located on the corner of Richmond and Ontario Streets, was approximately 14x16 feet. The entrance to this room was

through a door flush with the sidewalk. Doyle preceded Girton into the heater room. The only light came from the sidewalk and illuminated only the area around the heater. The electric light fixture was not equipped with a bulb. While Girton was looking for the water pipe Doyle struck a match and a violent explosion occurred, as a result of which both Doyle and Girton were seriously burned. Doyle subsequently died as a result of these injuries.

The only explanation of the accident is that gasoline vapors from the gasoline tank ascended to the connecting manifold, then descended through the other vent to the second tank formerly used for fuel oil, then through the copper tubes into the heater room. The gasoline fumes were thus ignited when Doyle struck the match which caused the explosion.

Atlantic's relationship to the garage consisted of supplying on order, gasoline in bulk, to facilities provided by the owners or tenants, and as an independent contractor in one instance when it relocated a pump at the request of the City. There is no evidence that Atlantic had any knowledge or any means of knowing of the alteration made in the system in 1934, when the owners installed the oil burning unit. Nor did it have knowledge or means of knowledge that a dangerous and hazardous condition existed.

Plaintiffs contend that Atlantic, having prepared the plan for the original installation, knew that there were two tanks; that it knew or should have known that the one tank for which they supplied gasoline had been inactive for some time prior to the accident; and that it is "customary" in the industry for the installation to be tested by air pressure before gasoline is delivered into a tank not serviced by the supplier immediately prior to the delivery. Atlantic contends that plaintiffs have failed to prove the breach of a duty based on custom and usage in the trade.

Plaintiffs have not sustained the burden of establishing a custom that was "certain, reasonable, distinct, un-

contradicted, continued and so notorious as to be probably known to all parties to be controlled by it": *Carlo v. Bessemer and Lake Erie R. R. Co.*, 293 Pa. 343, 347, 143 A. 5; *Brown v. American Steel Foundries*, 272 Pa. 231, 236, 116 A. 546. The contract which Atlantic had with the City to supply gasoline imposed no obligations upon it regarding servicing, maintenance, or repair of equipment. In making deliveries of gasoline, Atlantic was justified in assuming and acting upon the assumption that the facilities provided for the storage of gasoline were safe and non-hazardous. Cf. *Fritsch v. Atlantic Refining Co.*, 307 Pa. 71, 160 A. 699; *Griffith v. Atlantic Refining Co.*, 305 Pa. 386, 157 A. 791; *Fredericks v. Atlantic Refining Co.*, 282 Pa. 8, 12, 127 A. 615. There is no duty upon those who deliver gasoline to premises to inspect either the facilities into which the gasoline is pumped or pipes which might be located in a cellar or other part of a building.

Evidence of custom imposing duty upon Atlantic to air test the entire installation before delivery is relevant because: the City, in desiring to relocate one of the pipes on Richmond Street called Atlantic who, pursuant to agreement, inspected the gas tank, found it to contain about three gallons of gas and small quantities of water which it pumped out. Atlantic disconnected the pump on Richmond Street, cut the suction pump through which the pipe had drawn gasoline, removed the pump, and, using the pipe's former connection, attached a new suction rod. When the new pump was relocated, Atlantic's agent air tested the newly constructed line and found it air-tight and safe. This installation was wholly separate and distinct from the installation of copper tubing formerly used in supplying fuel oil to the oil burner. The tests made by Atlantic would not have revealed any leaks or dangerous conditions existing in the oil burning system. The work of relocating the pump was accomplished in a proper workman-like manner, and the dangerous condition in the oil burner installation was in no way affected thereby.

Plaintiffs seek to impose upon Atlantic not only the duty to notify the owner of a known dangerous condition but also the duty to discover hidden defects in equipment regarding a system of which it had no knowledge, and which system was separate and apart from that which it had contracted to install. Cf. *Rubin v. Girard Trust Company,* 154 Pa. Superior Ct. 257, 35 A. 2d 601; *Wissman v. General Tire Company,* 327 Pa. 215, 192 A. 633. The imposition of such duty upon a company must be rejected. Cf. Restatement, Torts, section 403. A failure to make an inspection does not create liability unless the inspection, if made, would have disclosed the particular defects which make the use harmful: Restatement, Torts, section 300, comment c. Plaintiffs have, therefore, failed to establish the breach of any duty by Atlantic. The court below was in error in not entering judgment *non obstante veredicto* in favor of The Atlantic Refining Company. Appeals Nos. 47 and 66 are sustained.

A landlord out of possession is liable for resulting injuries if, when he leases premises, he conceals an existing dangerous condition on the land which he has reason to believe the tenant will not discover. The liability of Brucker and Rybas, therefore, is limited to hidden or concealed defects: *Hayden v. Second National Bank of Allentown,* 331 Pa. 29, 199 A. 218; *Harris v. Lewistown Trust Company,* 326 Pa. 145, 191 A. 34. In the former case, this Court said (p. 31) : "The general rule is that the landlord who is entirely out of possession and control is not liable for bodily harm caused to the tenant and those upon the leased premises in the latter's right by reason of any dangerous condition existing when the tenant took possession. In other words, such a landlord owes no duty to persons coming upon the premises for conditions present at the time of the tenant's entrance. To this rigid rule of nonliability there are but two exceptions: (1) when the landlord conceals or fails to disclose dangerous condi-

tions of which he has knowledge and of which the tenant is unaware and cannot be expected to discover . . ."

When Brucker and Rybas leased the premises to the City of Philadelphia, clause No. 9 of the lease provided: "The said lessor hereby warrants that the heating boiler and appliances, roof and present toilet facilities of the building of which the demised premises are a part shall be in good working order, condition and repair at the time of the commencement of the term of this lease." The record is clear that the oil burning unit was installed in 1934 while the owners were still in possession; that it was then connected to the underground storage tank; and, that Rybas stated, the morning after the explosion, that he had installed the oil burner and the pipes connecting the oil burner to the underground storage tank. "Q. Did Mr. Rybas tell you who had installed the oil burner and the pipes connecting the oil burner and connecting the tanks? A. Yes. He did say, 'I installed it. There is nothing the matter with the oil burner.'" The landlords knew that the use of one of two underground tanks as an oil tank and the other for gasoline, the two tanks being connected by a common vent, was a dangerous and hazardous condition. The first exception in *Hayden v. Second National Bank of Allentown,* supra, is controlling here. ". . . a lessor of land who conceals a dangerous condition existing on land having no reason to believe that the lessee will discover it, is subject to liability for bodily harm caused thereby to the lessee and others on the land in his right. It follows that the lessor is equally liable where by express words he represents the land to be safe knowing that it is not so": Restatement, Torts, section 358, comment (d). The court below erred in awarding a new trial to Brucker and Rybas. Appeals Nos. 69, 70, 73, and 74 are sustained.

Plaintiffs contend that the court below erred in not granting their motions for a new trial as regards Hill-Chase & Company. The liability of Hill-Chase & Company must necessarily rest upon the legal proposition

that they, as tenants, returned exclusive possession of the property to the owners, Brucker and Rybas, with knowledge of a concealed and hidden defect which it knew the landlords would not discover. If the landlords knew of the defect there can be no liability upon the outgoing tenants. Brucker and Rybas, in clause 9 of the lease to the City of Philadelphia, specifically warranted that the "heating boiler and appliances . . . of which the demised premises are a part shall be in good working order, condition and repair at the time of commencement of the term of this lease." Further, when the oil burning unit was removed, on January 1, 1941, it was returned to the landlords. They knew, therefore, of the condition of the boiler room as regards the removal of the unit. By their warranty they must be charged with knowledge of any defect which a reasonable inspection would have discovered. If it be assumed that the copper tubing was merely hammered and not sealed the same would have been revealed by an inspection of the landlords. Whether the caps remained upon the pipe and were not properly closed would also have been revealed. In either event, Brucker and Rybas knew of the complete system of operation. They knew of the removal of the unit, and, in fact, knew more than any other person could reasonably have been expected to know. The refusal to award a new trial as regards Hill-Chase & Company was proper.

Appeals Nos. 65, 67, 71, 72, 75, 76, 78, and 79 are dismissed; appeals Nos. 47, 66, 69, 70, 73, and 74 are sustained; the record is remanded to the court below with instructions to enter judgment *non obstante veredicto* in favor of The Atlantic Refining Company, to set aside the new trials awarded to Brucker and Rybas, and to reinstate the verdicts of $25,000 and $15,000 against Brucker and Rybas, and to enter judgments on the verdicts so reinstated in favor of the respective plaintiffs.