Jones *v.* Jones, Appellant.

Argued September 30, 1957.   Before JONES, C. J.,
BELL, CHIDSEY, ARNOLD, JONES and COHEN, JJ.

. *Martin E. Cusick,* with him *William J. Joyce, Wie-sen, Cusick & Madden* and *Joyce, Acker & McKay,* for appellant.

*E. V. Buckley,* with him *Donovan H. Henry* and *Mercer & Buckley,* for appellee.

OPINION BY MR. JUSTICE BELL, November 11, 1957:
Plaintiff, an experienced farmer, 26 years of age, sued his father in trespass for loss of his right hand and a part of his right arm while working around a

corn husking and shredding machine on defendant's farm. Plaintiff averred that defendant was negligent (a) in furnishing a machine that lacked a shield which would prevent the hand of an operator of the machine from entering into the *snapper rolls,* and (b) in furnishing a machine that lacked a device which would automatically stop the snapper rolls in the event that a person's hand became caught therein, and (c) in failing to warn the plaintiff of the dangers involved in the use of the machine due to the lack of a shield or guard, and (d) in failing to provide a person to shut off the power of the machine if the operator's hand was caught therein. The jury returned a verdict for plaintiff in the sum of $30,500. The defendant took this appeal and urges that a judgment non obstante veredicto be here entered in his favor.

It is hornbook law that in considering a motion for a judgment n.o.v. we consider the evidence which is favorable to plaintiff, together with all reasonable inferences therefrom. Applying this test, the facts which were proved on behalf of plaintiff were as follows:

Plaintiff and defendant were experienced farmers and each owned a farm in Mercer County, Pa., approximately 13½ miles apart. Prior to the accident, plaintiff had many years of experience with farm equipment, including a corn binder, manure spreader, corn planter, mowing machine, hammer mill, ensilage cutter, hay rake and grain binder, but had never operated a husker-shredder machine.

Prior to the accident, plaintiff and defendant had a reciprocal arrangement under which each performed services for the other on the farm of the other. In July or August 1954, plaintiff and defendant saw a used husker-shredder machine known as a "Dues Husker-Shredder" on the premises of a dealer in farm

implements. Some time later, the machine was purchased by defendant for use on both farms. Plaintiff paid $30 toward the purchase price and was later reimbursed by his father. Plaintiff was present on defendant's farm on October 11, 1954 when the machine was delivered and saw the machine on that date. The function of the machine was to separate the ears of corn from the stalks and to grind the stalks into fodder. It had a metal frame resting on four wheels; it was about 5 feet high, 4 feet wide and 8 feet long. In the operation of the machine, the operator stood on a wagon on the left side of it and placed the stalks of corn on the conveyor belt with the butt end toward the rolls. The stalks would then be moved forward on the belt until caught by the snapper rolls. When the corn and stalks made contact with the snapper rolls the corn dropped downward through the space between the conveyor belt and the snapper rolls; and the stalks passed through the rolls and were ground up. The snapper rolls resembled the wringer rolls on a washer machine and rotated in opposite directions at a speed of about 500 revolutions per minute and moved at a speed of about $2\frac{1}{2}$ times faster than the conveyor belt. The clearance between the rolls was less than $\frac{1}{4}$ of an inch.

The snapper rolls and conveyor belt were propelled by electric power from a tractor located about 50 feet distant from the machine. A long belt connected the fly wheel of the tractor with the machine. The only way to stop the conveyor belt and the snapper rolls was by turning off the power at the tractor. It was obviously very dangerous for an operator of the machine to place his hand in the area between the end of the conveyor belt and the snapper rolls.

The machine was first operated by the plaintiff on October 23, 1954. On that date the plaintiff fed corn

stalks into the machine and worked around it from 1:30 p.m. to 3:30 or 4:00 p.m. On October 25, 1954, the date of the accident, the machine was located on the barn floor of the defendant's premises and the tractor was located about 50 feet away in the barnyard and to the right of the machine. The plaintiff was feeding corn stalks into the machine from a wagon located on the left side of the machine. A neighbor of the defendant, named Harold Reed, was standing on the wagon about 6 or 8 feet away from the plaintiff and was assisting the plaintiff by handing to him the corn and stalks that plaintiff, in turn, placed on the conveyor belt. Harold Reed had been engaged by the defendant on this date to assist in the corn husking operation. As between the plaintiff and Reed, the plaintiff was in charge. The machine was noisy while in operation. Another neighbor, a Mr. Zahnizer, was also present on defendant's farm on October 25, 1954. He and the defendant had been working together several hundred feet distant from the machine in the field loading corn and stalks into a wagon for hauling to the machine.

After the plaintiff had been feeding the machine for over an hour on October 25, 1954, during which time one wagon load of corn and part of another went through the machine, his right arm became caught in the snapper rolls of the machine. When plaintiff's hand became caught in the snapper rolls, he grabbed his right arm with his left hand to keep his right hand from going farther into the snapper rolls. Plaintiff then asked Reed to shut down the machine. Reed called to Zahnizer, who was hard of hearing, to shut down the machine, and when Zahnizer did not respond, Reed went to the tractor and stopped the power on the tractor. This took about five minutes. Plaintiff's right arm had to be amputated three inches above the wrist.

Plaintiff proved that the "Dues Husker-Shredder" was no longer built, although parts were still sold for the Dues machine. Three other better or improved machines were on the market, known as the McCormick-Deering machine, the New Idea machine and another type of McCormick machine. These were equipped with some kind of safety device which when activated stopped the movement of the snapper rolls. Defendant did not give plaintiff any instructions as to the manner of operating the machine, or inform him that it had no shut-off device if his hand was caught in the snapper rolls. However, plaintiff knew that shutting off the tractor was the only method of stopping the snapper rolls.

The accident, according to plaintiff, happened as follows: "Q. To the best of your knowledge, how did this accident happen, what occurred? A. I had gloves on and they was a flare-type glove, a stalk might have got caught, these stalks are bent up pretty bad, one bent end could have got in my glove and the other end into the snapping rolls and jerked my hand in before I could even, the rolls are moving so fast, you would have no realization that the hand was even moving towards there at any amount before it got in the rolls. The only other way that I know of it could possibly get in, if I had been reaching for a stalk of crossed corn and while trying to move it with another stalk, the end which would be out of my sight, standing up, might have got caught in the snapping rolls and with your reflexes, your reflexes wouldn't allow you to let go of that stalk of corn that quick. . . . Q. Tell us what your next impression was when your hand was caught. A. Well, from there on it's pretty hazy, I suppose. I could feel the pain in my hand and realized my hand was starting in the machine. Q. And what do you next recall? A. Pulling back, I was trying to stop it from going

any further. Q. Do you recall whether you used any assistance with any other part of your body to do that? A. I remember grabbing with my other hand to help pull back. Q. Could you tell us the approximate time it took you to grasp your right arm with your left hand? A. It couldn't have been more than just a few seconds, I wouldn't think. Q. Do you have any specific recollection as to the approximate time between the time that your hand was caught and the time that the power was shut off? A. It was quite a while. Q. Can you tell us what you were doing during this time? A. Pulling back trying to stop my hand from going in further. Q. Do you know whether or not your hand did go in any further? A. Not after I got pulling back I don't believe it did. . . .

"Q. You knew that it was dangerous to get too close to those snapping rolls, didn't you? A. Yes, sir, I knew that. . . . Q. You knew it was dangerous to get your hand too close to the snapping rolls, didn't you? A. I knew that, yes, sir. Q. You knew that on Saturday, October 23? A. Yes, sir, I knew that. Q. And you knew that on the 25th? A. Yes, sir, I knew that. Q. You knew that the snapping rolls moved continuously as long as the tractor was going, didn't you? A. I knew of no other way to shut them off, no. Q. You were asked that, my boy, weren't you, 'Were the snapping rolls moving continuously?' and your answer was, 'Yes, as long as the tractor was going.' That's correct, isn't it? A. That's right. Q. During all of your experience in industry and mills and on the farm and operating machinery you have acquired information and knowledge and experience that has brought home to you that any moving parts in machinery are dangerous if a part of the human anatomy comes in contact with them? A. That's right, sir. Q. You knew that long before October 25, didn't you? A. Yes, sir, I knew that."

Landowners as well as employers are not insurers of business invitees or employees, and absolute safety in this threshing field is unattainable. The law recognizes that a farmer, for financial and economic reasons, cannot buy and furnish to his employees new farm machinery every year or every few years. In *Prattico v. Hudson Coal Co.*, 347 Pa. 490, 32 A. 2d 733, where the Court entered a judgment non obstante veredicto, the Court said (page 494) : " 'An employer is not even bound to provide the safest machinery or the newest and most approved appliances.' "

We need not decide whether plaintiff's evidence was legally sufficient to establish that defendant was negligent because he failed to provide a reasonably safe place to work, or, in this case, a place to work and a machine equipped in accordance with the ordinary or general usage* in this field. Assuming, without deciding, that defendant was negligent, it is clear from plaintiff's evidence that he knew the dangers of this machine which were *obvious,* and that his own negligence in feeding or moving a stalk of corn was the sole cause of this tragic accident. Plaintiff's own evidence convicted him (a) of assuming the obvious risk of this machine, and (b) lack of due care in feeding the stalks of corn into the snapper rolls, or in placing his hand in a position so dangerously close to the snapper rolls as to be caught therein.

For these reasons, judgment is here entered for defendant non obstante veredicto.

---

* Cf: *Prattico v. Hudson Coal Co.*, 347 Pa., supra; *Cool v. Curtis-Wright, Inc.*, 362 Pa. 60, 66 A. 2d 287, and cases cited therein; *Doyle v. Atlantic Refining Co.*, 357 Pa. 92, 53 A. 2d 68.