J-S39031-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| BRIAN MILLS, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| GUBBIO'S LLC AND ELMO W. | : | |
| BALDASSARI, | : | |
| | : | |
| Appellees | : | No.  1907 MDA 2015 |

Appeal from the Order Entered October 2, 2015
in the Court of Common Pleas of Lackawanna County,
Civil Division, at No(s): 13 CV 2940

BEFORE:    STABILE, PLATT,* and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:                **FILED JUNE 28, 2016**

Brian Mills appeals from the October 2, 2015 order granting summary

judgment in favor of Elmo W. Baldassari.  We affirm.

The trial court summarized the facts underlying this case as follows.

> [Mills] contends that on January 8, 2013, he slipped and fell on snow and ice that was present on the sidewalk located at 411 Chestnut Street, Dunmore.  At the time of Mills' fall, the property at 411 Chestnut Street was owned by [Baldassari], and [] Gubbio's, LLC [] operated at a restaurant at that location. Baldassari resided at a different address in Dunmore, and Mills owned the Chestnut Street Tavern which was located directly across the street from Gubbio's.

> Twenty-one months prior to Mills' fall, Gubbio's and Baldassari executed a "Lease Agreement" on April 8, 2011, pursuant to which Gubbio's leased the first floor of Baldassari's building at 411 Chestnut Street for the five year period from May 1, 2011 through April 30, 2016.  During the term of the lease, Gubbio's agreed to "use and occupy the premises for the purposes of operating a bar and restaurant."  Section 9 of the lease is entitled "Sidewalks and Parking Areas," and provides:

_____

*Retired Senior Judges assigned to the Superior Court.

[Gubbio's] at its own expense will keep the sidewalks and curbs and parking areas free from snow, ice, dirt [and] rubbish and will not obstruct the sidewalks, or use them, or permit them to be used for any purpose other than ingress and egress to and from the premises.

Section 10 of the Baldassari-Gubbio's lease obligates Gubbio's to "carry, maintain and pay premiums for comprehensive general public insurance against claims for bodily injury, death, or property damage arising out of the use or occupancy of the property by [Gubbio's] in a combined single limit amount not less than $1,000,000.00 for any one accident or occurrence."[1]

Gubbio's owner, Todd Brown, and its executive chef, William Genovese, who managed Gubbio's daily operations, both testified that Gubbio's, not Baldassari, was responsible for the removal of snow and ice from the parking lot and sidewalks at the 411 Chestnut Street property during the term of the lease. Mr. Genovese stated that Gubbio's hired his son's friend, Neil Pal, to shovel and salt the parking lot and sidewalk during period of winter precipitation, and Mr. Brown confirmed the existence of that arrangement. In addition, Gubbio's dishwasher would also spread rock salt on the sidewalks during the wintertime.[2]

On the evening of January 8, 2013, Mills parked his vehicle in the Gubbio's parking lot, walked along the sidewalk at 411 Chestnut Street, crossed Elm Street and entered the Chestnut Street Tavern. After "eating the wing bites" at his tavern, Mills exited the tavern and walked to his vehicle to get "Zantac for heartburn." Once Mills retrieved the Zantac from his vehicle, and he was returning to the tavern, he allegedly slipped and fell on the 411 Chestnut Street sidewalk.

---

[1] It was later revealed that Brown did not maintain liability insurance in violation of the lease.

[2] Mr. Pal was convicted of first-degree murder on June 12, 2014, and is now serving life in prison.

- 2 -

When Mills was asked during his deposition to identify what he slipped on, he described it as "ice spots…like runoff" that "wasn't one solid sheet of ice."  After Mills fell, he used his cell phone to contact the Chestnut Street Tavern for help, and his friend and employee, Walter Haynos, came to his assistance. Mr. Haynos stated that he observed "black ice" on the sidewalk which "looked like water that ran off earlier in the day and then during the course of the evening, it got colder so it froze."

Trial Court Memorandum and Order (TCO), 10/2/2015, 2-5 (internal citations and footnotes omitted).

On June 5, 2013, Mills filed a complaint against Gubbio's to recover damages as a result of injuries he suffered from this slip and fall.  On June 28, 2013, Mills filed an amended complaint adding Baldassari as a defendant.  Each defendant filed an answer and new matter to the complaint, and the parties conducted discovery.  On January 9, 2015, Baldassari filed a motion for summary judgment.  Baldassari argued that "because [he] was not responsible for maintaining the sidewalks and keeping them free of ice and snow, he cannot be deemed liable for [Mills'] slip and fall." Motion for Summary Judgment, 1/9/2015, at ¶ 16.  Moreover, Baldassari contended that Mills' testimony did not "demonstrate that the snow or ice accumulated in ridges or elevations of such size to unreasonably obstruct travel and create a dangerous condition" and was thus barred by the "hills and ridges" doctrine. *Id*. at ¶¶ 23, 25.  Mills responded, and the parties appeared before the trial court on May 20, 2015, to argue the motion.

- 3 -

At that argument, Mills claimed that discovery was ongoing. Specifically, he pointed out that just the day before, Mills deposed Brown, who testified that Baldassari has a separate lease with Genovese who rents the apartment above Gubbio's. Mills argued that because the sidewalk was a common area, the responsibility for its maintenance cannot be delegated to a tenant. The trial court permitted supplemental briefing.

In Mills' supplemental brief, he argued that Baldassari had an obligation to keep the sidewalks free of snow and ice based upon the lease agreement between Baldassari and Genovese. He further contended that even if this is not the case, then Baldassari could still be liable "by leasing the property to Gubbio's, LLC before inspecting or repairing the dangerous condition that allowed for the run off and re-freezing of icy conditions on the sidewalks[.]" Supplemental Brief in Opposition to Summary Judgment, 8/11/2015, at 4 (unnumbered).

On October 2, 2015, the trial court granted summary judgment in favor of Baldassari. On October 28, 2015, Mills discontinued his action against Gubbio's and filed a notice of appeal from the order granting summary judgment. The trial court ordered Mills to file a concise statement

of errors complained of on appeal pursuant to Pa.R.A.P. 1925, and Mills complied.[3]

On appeal, Mills sets forth two issues for our review.

1.  Whether the trial court erred in granting summary judgment in favor of [Baldassari] when a genuine issue of material fact existed related to [Mills'] fall?

2.  Whether the trial court incorrectly applied the **Nanty-Glo**[4] Rule, finding William Genovese and Todd Brown were adverse parties for purposes of using their testimony to grant summary judgment.

Mills' Brief at 5 (suggested answers and unnecessary capitalization omitted).

Our standard of review on an appeal from the grant of a motion for summary judgment is well-settled.  A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule.  Pa.R.C.P. 1035.2.  The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered.  Where the nonmoving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment.  Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law.  Lastly, we will review the record in the light most favorable to the non-moving party, and all doubts as to the

---

[3] Although the trial court did not file a new opinion, it did file a thorough memorandum with its order granting Baldassari's motion for summary judgment.

[4] **Borough of Nanty-Glo v. Am. Sur. Co. of New York**, 163 A. 523 (Pa. 1932).

existence of a genuine issue of material fact must be resolved against the moving party.

*Krauss v. Trane U.S. Inc.*, 104 A.3d 556, 562-63 (Pa. Super. 2014) (quoting *Shepard v. Temple University*, 948 A.2d 852, 856 (Pa. Super. 2008)).

We begin our analysis mindful of the following. "The mere fact that an accident occurred does not give rise to an inference that the injured person was the victim of negligence." *Estate of Swift v. Northeastern Hosp. of Phila.*, 690 A.2d 719, 722 (Pa. Super. 1997). "To establish a cause of action sounding in negligence, a party must demonstrate [he or she was] owed a duty of care by the defendant, the defendant breached this duty, and this breach resulted in injury and actual loss." *McCandless v. Edwards,* 908 A.2d 900, 903 (Pa. Super. 2006).

"As a general rule, a landlord out of possession is not liable for injuries incurred by third parties on the leased premises because the landlord has no duty to such persons." *Jones v. Levin*, 940 A.2d 451, 454 (Pa. Super. 2007). "This general rule is based on the legal view of a lease transaction as the equivalent of a sale of the land for the term of the lease." *Id*. "Thus, "liability is premised primarily on possession and control, and not merely [on] ownership." *Id*.[5]

---

[5] Mills appears to contend that because of the separate lease agreement between Baldassari and Genovese, there is a genuine issue of material fact as to whether Baldassari is a landlord out of possession. Mills' Brief at 18.

There are a number of exceptions to the general rule of non-liability of a landlord out of possession…: [for example,] the landlord may be liable if he or she has reserved control over a defective portion of the leased premises or over a portion of the leased premises which is necessary to the safe use of the property (the "reserved control" exception). The reserved control exception is most clearly applicable to cases involving "common areas" such as shared steps or hallways in buildings leased to multiple tenants. However, the applicability of the exception is not limited to such well-defined "common areas." Our Supreme Court invoked the reserved control exception in a case involving an allegedly defective radiator in one tenant's unit of a building occupied by several commercial tenants, after the landlord-owner of the building was sued for negligence by a tenant who had been seriously burned by steam from the radiator. Importantly, the entire building was served by a central steam-heating system, which was controlled and operated by the landlord. As our Supreme Court explained,

> where the landlord retains control of a part of the leased premises, which is necessary to the safe use of the leased portion, he is liable to the lessee and others lawfully on the premises for physical harm caused by a dangerous condition existing upon that part over which he retains control, if by the exercise of reasonable care he could have discovered the condition and the risk involved, and made the condition safe.

*Smith* [*v. M.P.W. Realty Company*, 225 A.2d 227, 229 (Pa. 1967)] (citing Restatement (Second) of Torts § 361 and also noting that § 361 had previously been applied to plumbing and heating systems over which the landlord had retained control).

\*\*\*

---

Mills cites no case law in support of this proposition. Moreover, Mills does not assert that Baldassari actually resides on the property. Thus, it is clear that Baldassari is a landlord out of possession, and Baldassari's duty to Mills is governed by that body of case law.

[A]nother exception—the public use exception—to the general rule [is] that a landlord out-of-possession is not liable for injuries to third parties on the leased premises. Under this exception, a landlord out-of-possession may be liable if he or she has leased the premises for a purpose involving admission of the public and has failed to inspect for or repair dangerous conditions prior to transferring possession of the property. The rationale for this exception lies in the lessor's responsibility to the public, which he is not free to shift to the lessee in any case where he has reason to expect that the lessee will admit the public before the land is put in reasonably safe condition for [the public's] reception.

*Jones*, 940 A.2d at 454-57 (some citations and quotation marks omitted).

With respect to the aforementioned reserved control exception, Mills argues that the sidewalk is a common area where Baldassari has reserved control due to the fact that there are two tenants in this building. Mills' Brief at 17. The trial court disagreed, and offered the following.

In the case at bar, Mills has admitted in his pleadings that Baldassari did not reside at the leased property at 411 Chestnut Street, nor did Baldassari reserve control of the sidewalks…. By virtue of the plain language of the Baldassari-Gubbio's lease, Gubbio's bore sole responsibility for maintaining the sidewalk at 411 Chestnut Street free of snow and ice. Baldassari did not retain control over the sidewalks or common areas, and per the unequivocal wording of the lease agreement, he cannot be liable for injuries allegedly sustained as a result of a fall due to the presence of ice on the sidewalk.

TCO, 10/2/2015, at 11-12 (citations omitted).

We discern no error of law in the trial court's reaching this conclusion. The lease agreement between Baldassari and Gubbio's clearly places responsibility on Gubbio's to remove the snow and ice from the sidewalk. Simply because this was a multi-tenanted building, with Genovese occupying

the top floor, there is no automatic reservation of control of the sidewalk.[6]

Accordingly, we agree with the trial court there was no genuine issue of material fact as to this issue and summary judgment was proper on this basis.

Next, Mills argues that the public use exception applies.[7]  With respect to what caused the fall, Mills states that he "fell on black ice on a sidewalk." Mills' Brief at 16.  Mills suggests that this "black ice existed due to run-off from the plowed snow piles in the corner of the parking lot at Gubbio's. Snow was plowed into the corner of the parking lot, melted during warmer temperatures, and then re-froze at night, leading to the black ice condition that cause[d] the fall of [] Mills." *Id*.  Mills goes onto argue that Baldassari is liable because he neglected "to inspect for or repair dangerous conditions

---

[6] We recognize that a landlord may be liable for occurrences on a sidewalk where the ground floor is leased to multiple tenants.  "[A] tenant who has leased only one part of a building's ground floor is not liable to third parties for defects in the structure's sidewalk. In such a case, the landlord is liable, and if he has a right over against a tenant because of a contract or by reason of duty owing by the tenant to him, he may recoup himself by action against the tenant." **Weingreen v. Gomberg**, 207 A.2d 781, 783 (Pa. 1965).  However, as we have discussed, *supra*, there is no dispute that Gubbio's is the only tenant on the ground floor.

[7] The trial court suggests that Mills did not argue this exception; however, it is clearly included by Mills in his supplemental brief in opposition to summary judgment. **See** TCO, 10/2/2015, at 12 ("The 'public use' exception, while not argued by Mills…"); Supplemental Brief in Opposition to Summary Judgment, 8/11/2015, at 4 (unnumbered) (arguing then Baldassari could still be liable "by leasing the property to Gubbio's, LLC before inspecting or repairing the dangerous condition that allowed for the run off and re-freezing of icy conditions on the sidewalks").

existing on the property before possession [was] transferred to the lessee."

***Id***. at 18-19.

Again, the trial court disagreed, and offered the following.

> Although Baldassari obviously knew that the lease of his property for the operation of a bar and restaurant involved the admission of the public, the record is completely devoid of any evidence that a hazard or defect in the sidewalk, that ostensibly caused or contributed to Mills' fall, existed prior to or at the time of Baldassari's transfer of the occupancy to Gubbio's on May 1, 2011. Mr. Pal's piling of the shoveled snow, which allegedly melted and refroze in isolated "ice spots" on the sidewalk, did not occur until December 2012 or January 2013. Absent some proof that some dangerous condition existed at the time of the transfer of the property to Gubbio's, Baldassari cannot possibly be held liable under the public use exception.

TCO, 10/2/2015, at 12-13.

Again, we discern no error in this conclusion. An out-of-possession "landlord owes no duty to persons coming upon the premises for conditions present at the time of the tenant's entrance." ***Dorsey v. Cont'l Associates***, 591 A.2d 716, 719 (Pa. Super. 1991) (quoting ***Doyle v. Atlantic Refining Co.***, 53 A.2d 68, 71 (Pa. 1947)). An exception to "this rigid rule of non-liability" is "when the landlord conceals or fails to disclose dangerous conditions of which he has knowledge and of [which] the tenant is unaware and cannot be expected to discover…." ***Id***. This exception is clearly inapplicable in this case, where, as Mills suggests, the allegedly dangerous condition was caused by snow melt that occurred approximately two years after the premises was leased to Gubbio's. Accordingly, we agree with the

trial court that no genuine issue of material fact exists as to the public use exception.

Finally, Mills argues that the trial court erred by relying on the oral testimony of Brown and Genovese in violation of **Nanty-Glo**. Mills' Brief at 21.

> In [**Nanty–Glo**], our Supreme Court held that a directed verdict could not be entered where the moving party relied exclusively on oral testimony, either through affidavits or deposition, to establish the absence of a genuine issue of material fact. The **Nanty–Glo** rule was reaffirmed and expanded to encompass summary judgment in **Bremmer v. Protected Home Mut. Life Insurance Co.**, 436 Pa. 494, 260 A.2d 785 (1970)[.]
>
> The rule provides that, "[h]owever clear and indisputable may be the proof when it depends on oral testimony, it is nevertheless the province of the jury to decide, under instructions from the court, as to the law applicable to the facts[.]" **Nanty–Glo**, [163 A.] at 524.

**Rosenberry v. Evans**, 48 A.3d 1255, 1259 (Pa. Super. 2012) (some citations omitted).

First, in granting summary judgment in favor of Baldassari, the trial court relied on the written lease agreement between Baldassari and Gubbio's, along with Mills' testimony about how the accident occurred. Since neither is a prohibited category pursuant to **Nanty-Glo**, there was no violation.

To the extent the trial court did rely on the testimony of Brown and Genovese, we agree with the trial court's conclusion that Brown is an adverse party. The trial court held that "[s]ince the testimony of [Mills] and

[Genovese] inculpates Gubbio's by imposing the duty of care squarely on Gubbio's, rather than Baldassari, Gubbio's is an 'adverse party' for purposes of the entry of summary judgment on behalf of Baldassari." TCO, 10/2/2015, at 13.

"The uncontradicted deposition testimony of a co-defendant, who is an adverse party and equally liable to the plaintiff, is a sound basis for summary judgment." *Askew By Askew v. Zeller*, 521 A.2d 459, 464 (Pa. Super. 1987). "Where the moving party supports his motion for summary judgment by using the admissions of the opposing party, even though they are testimonial, or of the opposing party's own witnesses, *Nanty-Glo* does not forbid the entry of summary judgment. In such a situation, the court may grant the motion without determining the credibility of the testimony, for it is an 'unconditional surrender' by the opposing party, to which he must be held." *Garcia v. Savage*, 586 A.2d 1375, 1376 n.3 (Pa. Super. 1991). Thus, we agree with the trial court that Brown's deposition testimony, that his company, Gubbio's, was solely responsible for snow removal from the sidewalks, fit into this "unconditional surrender" exception to *Nanty-Glo*. Accordingly, the trial court could rely on the testimony of Brown, as he was an adverse party to Baldassari.[8]

---

[8] Mills argues that the "extended and interconnected relationships between [] Baldassari and the representatives of Gubbio's LLC [made it] less than clear they can be identified as adverse parties." Mills' Brief at 21. However, these relationships do not change the fact that the lease agreement squarely

Because Mills has failed to present sufficient evidence to sustain his cause of action, the trial court did not err in granting summary judgment in favor of Baldassari. Accordingly, we affirm the trial court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 6/28/2016

---

put responsibility on Gubbio's to remove snow and ice from the sidewalk. *See Myers v. Penn Traffic Co.*, 606 A.2d 926, 930 (Pa. Super. 1992) ("Although the non-moving party must be given the benefit of all reasonable inferences, that party need not be given the benefit of inferences not supported by the record or of mere speculation.").